GEORGE W. LAINHART, *Appellant*, v. SIDNEY J. CATTS, *et al.*, *Appellees*.

Opinion Filed March 29, 1917.

1. The drainage and reclamation of swamp and overflowed lands are a proper exercise of legislative authority.

2. The legislature, unless restricted by constitutional limitations, may establish districts for draining and reclaiming large bodies of swamp and overflowed lands in the State by direct enactment, or through the medium of administrative officers or commissions.

3. No duly enacted statute should be declared unconstitutional unless, beyond a reasonable doubt, it is in positive conflict with some designated or identified provision of the Constitution.

4. A local or special charge or tax imposed on land in a Drainage District to pay for proposed local public improvements therein, by which such property derives a special benefit, constitutes a Special Assessment, distinct from general taxation for State, county and municipal purposes.

5. There is no express provision in the State Constitution as to Special Assessments for local improvements or as to the formation of taxing districts for particular purposes.

6. When a statute does not violate the federal or State Constitution, the legislative will is supreme and its policies are not subject to review by the courts, whose province it is not to

regulate, but to effectuate the policy of the law as expressed in valid statutes.

7. The enactment of Chap. 6456 of the Laws of Florida, and the amendment thereto, establishing the Everglades Drainage District, being a valid exercise of the legislative power, the duties imposed upon certain county officers in carrying out the provisions of such enactments, being of the same nature as their general official duties, as well, also, as their compensation provided in such enactments, are a mere incident to, and the necessary concomitant with the exercise of the power of the legislature to establish such District and to effectuate the purposes for which it is established.

8. Chap. 6456 of the Laws of Florida, as amended by Chap. 6957, establishing the Everglades Drainage District and providing for Special Assessment of taxes on land embraced therein, is not in conflict with Sec. 20, Art. III of the Constitution providing that "the legislature shall not pass special or local laws in any of the following enumerated cases: that is to say regulating the jurisdiction and duties of any class of officers, except municipal officers, * * * for assessment and collection of taxes for state and county purposes, * * * regulating the fees of officers of the State and county."

9. A general tax or Special Assessment must be uniform, in that it must be imposed upon the land subject to such charges so that the burden on every parcel thereof will bear a just proportion to that imposed upon all the other parcels similarly situated and included within the assessment provisions

10. It is within the legislative power to establish, directly, a drainage district for legitimate public purposes, to divide the lands in such districts into classes and fix the actual amount of Special Assessments placed at a level rate, founded upon a unit of area, which rate is equal and uniform as to the lands in each class, but varies as to the classes, unless the language employed in the legislative act makes it manifest that the legislature did not intend to distribute the burden on the lands in porportion to the benefit it would in the legislative judgment receive from the proposed drainage system. Such enactment does not violate the Constitutional requirements for a uniform and equal rate of taxation and that the legislature

shall prescribe such regulations as shall secure a just valuation of property for taxing purposes.

11. Sections 2, 3 and 5 of Art. IX of the State Constitution, apply only to general taxation for State, county and municipal purposes and have no application to Special Assessments for local improvements.

12. The provision of Chapter 6456 of the laws of Florida, as amended by Chapter 6957, that the revenue derived from the Special Assessment thereby imposed shall be set aside and especially appropriated to carry out the particular purposes stated in the Acts, is in effect an appropriation made by law; and such provision is not in conflict with Sec. 4, Art. 12 of the Constitution providing that no money shall be drawn from the Treasury except in pursuance of appropriations made by law.

13. If the title of an Act expresses its subject with sufficient certainty to give reasonable notice of the purposes dealt with by such Act and of its scope, and reasonably leads to inquiry as to its contents, it is sufficient. The title need not be an index to the Act.

14. If a duly enacted statute contains unconstitutional provisions and such provisions may be eliminated and the remainder of the statute may be effective for the purposes designed, and will not cause results not intended by the Legisalture, and it does not appear that such statute would not have been enacted without the invalid portions, such invalid portions may be disregarded and the remainder of the statute enforced if by so doing the legislative intent may be lawfully carried out.

15. The courts will not pass upon the constitutionality of an Act in a proceeding which does not involve the part of the Act claimed to be unconstitutional, if the part involved is complete and operative within itself.

16. The action of the legislature in apportioning special assessments placed on lands in proportion to the benefits which, in the judgment of the legislature, such lands will receive from proposed local improvements to be paid for from the pro-

ceeds of such assessments, is within the legislative power and cannot be reviewed in the courts unless it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power.

17. When, in a duly established drainage district, a special assessment is imposed and the rate thereof apportioned on lands therein, by a direct exercise of the legislative power, requiring no inquiry as to the weight of the evidence nor investigation in the nature of a judicial inquiry, then no notice to, or hearing of the owners of such lands on the question of whether or not the benefits to such lands will be in accord with the rates imposed thereon, is essential, under the constitutional provision that no person shall be deprived of property without due process of law.

18. Chapter 6456 of the Laws of Florida as amended by Chapter 6957, making a direct legislative special assessment on lands embraced within the Everglades Drainage District for local benefits, and the apportionment of rates thereon, is not in conflict with Secs. 1 and 4 of the Bill of Rights or of Sec. 29, Art. XVI of the Constitution, by reason of the failure of such statutes to provide for giving notice to the owners of such land of such assessment and apportionment or for an opportunity for them to be heard upon the merits thereof, the assessment and apportionment being made by direct legislative enactment, and not through administrative officers or otherwise.

Appeal from Circuit Court for Palm Beach County; H Pierre Branning, Judge.

Order affirmed.

H. L. Bussey, for Appellant;

T. F. West, Attorney General, for the State.

Love, Circuit Judge.—The appellant, complainant below, who is the owner of several tracts of land em-

braced within the Everglades Drainage District, brought this suit in the Circuit Court for Palm Beach County to enjoin and restrain the Board of Commissioners of Everglades Drainage District, and the Tax Collector and Tax Assessor of Palm Beach County from doing any act or thing in the furtherance of the assessment or collection of an acreage tax imposed upon his lands within said district for the years 1916 and 1917, under the provisions of Chapter 6456 of the Laws of Florida, as amended by Chapter 6957; and for the purpose of declaring said Acts unconstitutional..

The suit is brought against the Governor, Comptroller, State Treasurer, Attorney General and the Commissioner of Agriculture as such officials and against the same officials as the Board of Commissioners of Everglades Drainage District and against the Board of Commissioners of Everglades Drainage District, a corporation created by said Chapter 6456, the Tax Collector and Tax Assessor of Palm Beach County.

Complainant in his bill sets out in substance the provisions of Chapter 6456, Laws of Florida, said Chapter 6456, being entitled.

"An Act to Establish the Everglades Drainage District in This State and Define its Boundaries, to Create a Board of Commissioners for said District and to Define its Powers, Authorizing the Construction of Canals, Drains, Dikes, Reservoirs and Other Works for the Reclamation and Benefit of the Lands Embraced in said District and to Levy Assessments of Taxes upon the Lands Embraced in Such District and to provide for the Collection of the Same and the Sale of Lands to Enforce the Collection of Such Assessments and to Authorize the Board of Commissioners of said District to Borrow

Money and to Issue Bonds and Dispose of the Same, to Procure Money to Carry Out the Provisions of this Act, to Prevent Injury to Any Works Constructed Under This Act, and to Provide a Penalty for Violating such Provision."

By said Acts the legislature of the State, established a Drainage District, designated as the Everglades Drainage District, and therein definitely fixed and prescribed its boundaries, which embraced the whole or part of eight counties of this State, and includes within its boundaries, as it is stated in said bill, about 4,300,000 acres of land, the greater portion of which are swamps and overflowed lands.

The Governor, Comptroller, State Treasurer, Attorney General and Commissioner of Agriculture and their successors in office are constituted the governing board of such district and are designated as the "Board of Commissioners of Everglades Drainage District," are vested with all the powers of a body corporate and are authorized to establish, construct and maintain a system of canals, drains, levees, etc., to effect the drainage and reclamation of the lands within said district. Said Board has conferred upon it the right of eminent domain, and are authorized to enter upon, take and use such lands as it may deem necessary for the purposes stated in the Act, pending condemnation proceedings.

By section 5 of Chapter 6456 as amended by section 1 of Chapter 6957, for the purpose of constructing, completing and maintaining the works of drainage and reclamation authorized by the Act, annual assessments of taxes beginning with and including the year 1915 are levied and imposed upon certain definite and particularly described lands in said district.

In substance and effect the Act divides the land in the drainage district into three different zones or classes, in each of which is located certain land of complainant. On the lands embraced within the first zone, and which are particularly described is imposed an annual assessment or charge of 15c per acre for a period of four years; thereafter the rate is increased to 20c per acre per annum for a period of four years; and thereafter the rate is fixed at 25c per acre annually. On the lands in the second zone, likewise particularly described in the Act, is imposed an assessment or charge of 8c per acre for the first four years after which the rate is increased to 9c per acre annually for the succeeding four years and thereafter the rate is fixed at 10c per acre annually. In the third zone, the lands lying in which are also particularly described, the rate is fixed at 5c per acre annually. Certain specifically described lands are exempt from any charges or assessment.

It is provided that the proceeds derived from such assessments, shall be used by the said Board in defraying the costs and expenses incurred in draining and reclaiming the lands in said district, carrying out the provisions of the Act, repaying loans and interest and in the creation of a sinking fund for the retirement of such bonds as the Board might issue and the payment of the interest thereon, said Board being authorized to issue and sell bonds of said Everglades Drainage District not to exceed the principal sum of $3,500,000, the proceeds of which are to be used for the purpose of draining and reclaiming the lands located in said District.

At a stated time, each year, the Board is required to prepare for each county, included in the drainage Dis-

trict a list of the lands in such county which lie in said District, particularly describing the lands, the amount assessed upon each section of land or part thereof, and shall thereupon cause to be published in a newspaper at Tallahassee and Miami once a week for two weeks "a notice of the completion of such lists, and that the same can be examined at the office of said Board, and that on a day to be specified in said notice, not less than fifteen days from date of the first publication thereof the said Board shall meet at the office of the said Board and hear and determine all complaints in relation to the preparation of such lists by said Board."

These lists, when completed, are required to be forwarded immediately to the Tax Assessor of the respective counties lying wholly or in part in said District, and thereupon such Tax Assessor is required to enter the same upon the tax roll. Provisions for collecting such charges or assessments upon the land and for enforcing the same as well as for the redemption of lands from tax sale, are made in the Act similar to those of the statute providing for the collection of general State and county taxes but the fees of such officers fixed by the Act are required to be paid by the said Board.

By the Act "the State Treasurer shall be the custodian of all funds belonging to said Board and to said Drainage District" which funds are to be disbursed only upon the order of the Comptroller, countersigned by the Governor, such order to be drawn only upon vouchers approved by said Board.

The bill alleges the organization of the Board of Commissioners of said Drainage District and that at a meeting held on January 11th, 1916, it prepared lists of lands for the respective counties located in said District, for-

warded same to the proper Tax Assessors, and published the notice required, all in compliance with the provisions of the Acts; that the Tax Assessor of Palm Beach County duly entered the list transmitted to him upon the tax roll, and that under said Acts, certain assessments were levied and imposed upon certain described lands of complainant and that the Tax Collector is proceeding to collect such Drainage tax or assessment and unless restrained by the court, he will proceed to sell such lands of complainant for the said tax.

Complainant further charges that the said Board of Commissioners have adopted a resolution providing for the issuance of bonds, as authorized by the said Acts, $1,500,000 to be dated November 1, 1915, $1,500,000 to be dated May 1, 1916, and $500,000 to be dated May 1, 1917, to mature at various dates from the year 1920 to the year 1935 inclusive, and that said Board is now attempting to sell portions of said bonds.

It is further alleged in said bill that the greater portion of the lands embraced within said District are swamp and overflowed lands, but that many other portions of said lands are pine, hammock and open prairie and grazing lands, and require no drainage to render them fit and suitable for cultivation, grazing and similar uses; that a tract of 320 acres, one half of which is owned by complainant, against which a drainage tax of $48.00 is assessed by Chapter 6456 as amended, is dry hammock land and will receive no benefit whatever from the proposed works of drainage and other improvements authorized by said Act.

"That the lists of land sent out by the said Board to the Tax Assessors of the various counties and entered by them upon the said Rolls were taken and copied entirely from the said Chapter 6456 as amended by Chapter 6957, and that the Legislature of the State of Florida,

the Board of Drainage Commissioners and the said Tax
Assessor did not, nor did any of them, personally or by
agents or representatives, or in any other way, go upon,
view, investigate or examine the said lands in said Dis-
trict or any part thereof to determine the character of the
said lands as being in fact swamp and overflowed lands,
or lands which require Drainage or otherwise, nor has
any investigation ever been conducted or evidence taken
of any sort in respect to the nature, character and sit-
uation of the various lands in said District; but the said
Acts were enacted and the said taxes levied and imposed
and the said lists prepared without any such investigation
or evidence; so that in fact said acreage has been imposed
and assessed, not upon all the lands which are within the
boundaries of said Drainage District, or upon the lands
therein which are in fact swamp and overflowed lands,
but the said acreage taxes have been levied and imposed
arbitrarily and without any rule or plan which would
take into consideration any benefits or damages which
might result from the said proposed works of drainage
or other improvements, and without any hearing or op-
portunity for a hearing being given or afforded your ora-
tor or other persons or corporations to present evidence as
to the character and quality of said lands, or to show that
the same would not receive benefits from the said drain-
age works and improvements to be paid for with said
taxes, or to show that the said lands are not subject to the
said assessment of said acreage tax, or to present any op-
position whatever to said assessment; the said levy, as-
sessment and imposition of said tax being arbitrarily
made by the legislature of the State of Florida without
personal investigation, knowledge or familiarity with the
character and quality of the aforesaid lands in said Dis-
trict."

The bill charges that the said Acts of the Legislature and the attempted levy, assessment and imposition of said Drainage tax thereby made is in violation of the State Constitution in several specified particulars, hereinafter noted and prays that Chapter 6456 as amended by Chapter 6957 be declared unconstitutional; that the acts of the Board of Commissioners and of the Tax Collector of Palm Beach County resulting in the entry of the acreage tax upon the tax roll by the assessor; and the attempted assessment of such tax contained and extended upon the Tax Rolls by the Assessor for the year 1916 be declared null and void and constitutes a cloud upon the title of complainant's said lands; that the said Board of Commissioners and Tax Assessor be restrained and enjoined from performing certain duties imposed upon them respectively in the furtherance of the imposition, assessment or entry upon the tax rolls of Palm Beach County of said acreage tax for 1917, or any other tax or imposition under said Act, and that the said Tax Collector be restrained from collecting or attempting to collect said acreage tax for the year 1917, for general relief and for process.

To this bill defendants demurred on the grounds, in substance, of absence of equity in the bill and that it did not appear from the bill that the Acts attacked were unconstitutional in the particulars charged. The demurrer was sustained, and from the order sustaining it, the complainant has entered his appeal.

The purpose of the Act assailed as stated in section 1 is that "of draining and reclaiming the lands hereinafter described and protecting the same from the effects of water, for agricultural and sanitary purposes, and for the public convenience and welfare, and for the public utility and benefit, a drainage district is hereby established

to be known and designated as the Everglades Drainage District, the territorial boundaries of which" follow.

It is abundantly settled by the decisions of practically all of the States of the Union having large bodies of swamp and overflowed lands within their borders, which in their natural state are to a great extent unfit for habitation or cultivation, and which it is desired to utilize for such purposes, as well as by the Supreme Court of the United States, that the legislature, unless restricted by the State Constitution can create directly such districts such as the one provided for in the Act under consideration, or it may provide for their institution through proceedings in the courts or by local commissions in which the parties interested are notified to appear and present any objections they may have, the propriety of a delegation of this sort being a question for the State alone to determine.

In the consideration of questions arising under a statute of California providing for the establishment of drainage districts, the Supreme Court of the United States said:

"It is not open to doubt that it is within the power of the State to require local improvements to be made which are essential to the health and prosperity of any community within its borders, to this end, it may provide for the construction of canals for draining inundations, as well as for the opening of streets in cities and of roads in the country. The system adopted in California to reclaim swamp and overflowed lands by forming districts, where the lands are susceptible of reclamation in one mode, is not essentially different from that of other States, where lands of that description are found. The fact that the lands may be situated in more than one county can not affect the State to delegate authority for the establishment of a reclamation district to the supervisors of the county

containing a greater part of the lands. Such authority may be lodged in any board or tribunal which the legislature may designate." Hagar v. Reclamation District, No. 108, 111 U. S. 701.

To the same effect are Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. Rep. 56; Neal v. Vansickle, 72 Neb. 105, 100 N. W. Rep. 200; Houck v. Little River Drainage Dist., 248 Mo. 373, 154 S. W. Rep. 739; affirmed in 239 U. S. 254.

While this general legislative power is not denied by complaint, yet the constitutional validity of the Acts in question, the levy, assessments and imposition of the Drainage tax or rates are attacked by him on various grounds. It is necessary, however, that the general power of the legislature with reference to the establishment of drainage districts should be stated, as it is upon this that the validity of the statute, if it is to stand, must be based.

In the consideration of the objections presented and urged in this case, we shall assume as settled by the prior decisions of this court the principles of statutory construction that "no duly enacted statute should be declared inoperative on the ground that it violates organic law, unless it appears beyond all reasonable doubt that under any rational view that may be taken, it is in positive conflict with some identified or designated provision of Constitutional law." Pinellas Park Drainage Dist. v. Kessler, 69 Fla. 558, 68 South. Rep. 668; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769; Jackson v. Neff, 64 Fla. 326, 60 South. Rep. 350.

And that "our State Constitution is a limitation upon power; and unless legislation duly passed be clearly contrary to some express or implied prohibition in the Constitution, the courts have no authority to pronounce it invalid." State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39

South. Rep. 929; Stewart v. DeLand & Lake Helen Road & Bridge Dist., 71 Fla. 758, 71 South. Rep. 42.

The burden, then, of showing beyond a reasonable doubt that these Acts and their provisions which are assailed, are in positive conflict with some identified or designated provision of the organic law of the State, is upon the complainant; and in recognition of this obligation he urges that they are unconstitutional upon various grounds, which we will consider.

1.    Complainant contends that the Acts are inhibited by the following clauses of Section 20, Article III of the Constitution.

"The legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties' of any class of officers except municipal officers, * * * for assessment and collection of taxes for state and county purposes; * * * regulating the fees of officers of the State and county;" and by section 21 of the same Article.

Taking up first the particular objection that the provision of these Acts imposing assessments or charges upon the lands embraced within the said District are prohibited by the clause of Section 20, Article III of the Constitution, providing that the legislature shall not pass special or local laws for assessment of taxes for county and State purposes, it must be borne in mind that the Drainage District in question is established directly by the legislature of the State, its creation not being delegated to Local Boards, Commissions or other instrumentalities; the assessments or charges upon the lands are fixed, determined and imposed directly by the legislature and are not referred to the judgment of any Board or body to be ascertained and determined.

Such assessment or charges are, as stated in the Acts,

to provide means to accomplish the purposes set·out in these Acts and is a peculiar species of taxation distinct from the general burden imposed for State, county and municipal purposes, in that it is a local or special charge placed upon the land, situated in the Drainage District to pay for public improvements proposed to be made therein, on the theory that such property thereby derives a special benefit, and therefore such charges constitute a special assessment. Roesch v. State *ex rel.* Wyman, 62 Fla. 270, 56 South. Rep. 562.

It has been announced in a number of opinions by this court that "there is no express provision in the State Constitution as to special assessments nor is there.any express provision in such Constitution as to the formation of taxing districts for particular purposes." Stewart v. DeLand Lake Helen Road & Bridge District, 71 Fla. 158, 71 South. Rep. 42; Edwards v. City of Ocala, 58 Fla. 217, 50 South. Rep. 421; Anderson·v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775.

If there is no express provision in the State Constitution as to special assessments for Special District purposes, and as the appellant has failed to point out any implied prohibition in the organic law relative to this subject, it follows that this ground is untenable, for "where a statute does not violate the Federal or State Constitution the legislative will is supreme and its policy is not subject to review by the court, whose province it is not to regulate, but to effectuate the policy of the law as expressed in valid statutes." State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759.

2. It is urged that the Acts in question violate that part of Section 20, Article III, prohibiting the legislature from passing local or special laws, regulating the

jurisdiction and duties of any class of officers except municipal officers and regulating the fees of officers of the State and county, in that the Acts referred to impose upon Tax Assessors and Tax Collectors of the counties affected by the Drainage District certain duties respecting the Drainage Assessment and its collection which duties are not required of such officer in other counties of the State; and that the Acts provide for a certain compensation or fees to be paid the Tax Assessors, Tax Collectors and Clerks of Circuit Court of the Counties affected by the Drainage District for services rendered in connection with the assessment, collection and enforcement of the special assessment, which compensation is not paid to such officers in other counties of the State.

The duties and jurisdiction or powers of the officers in question do not differ in nature or kind from those of a like class of officers in the State; the difference is in degree, not kind.

The establishment of the Drainage District being within and a valid exercise of the legislative power, the duties and compensations provided for by these Acts are "a mere incident to and the necessary concomitant with the power" we have held above to exist in the legislature to establish the Drainage District and to carry out the purpose for which it was established. Kroegel v. Whyte, 62 Fla. 527, 56 South. Rep. 498.

III. As a further ground of objection to the constitutionality of the law, it is urged that the said Acts violate Sections 1, 2, 3 and 5, Article IX of the Constitution in that they provide for taxation which is not based upon a uniform and equal rate; that the tax is imposed upon a special class or description of property, arbitrarily and without just cause or reason designated by the Acts themselves and not by any officer or officers of the State of

Florida of the State or any county or municipality of the State; that such tax is imposed and levied by law and not in pursuance of law; that it is not assessed, imposed or levied upon the principles established by the Constitution for State taxation; that it is imposed without regard to the valuation of the property taxed; that the lands in the District are arbitrarily divided into four classes or divisions against which a different and discriminatory tax is imposed.

The sections of Article IX upon which these objections are based, are as follows:

"Section 1.    The legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes.

"Section 2.    The legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the principal and interest of the existing indebtedness of the State.

"Section 3.    No tax shall be levied except in pursuance of law.

"Section 5.    The legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for the State taxation.    But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits.    The legislature may also provide for levying a special capitation tax, and a tax on licenses.    But the capitation tax shall not exceed

one dollar a year and shall be applied exclusively to common school purposes."

As has heretofore been pointed out, the charges imposed by the Acts in question constitute a special assessment upon the lands in the District; and is distinct from the general burden imposed for State, county and municipal purposes, and as has been explained by a distinguished authority, are governed by principles that do not apply universally. The general levy of taxes is understood to exact contributions for the general benefits of government, and it promises nothing to the person taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good, special assessments on the other hand are made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and in addition to the general levy, they demand that special contributions, in consideration of the special benefits shall be made by the person receiving it. 2 Cooley on Taxation, 1153.

As we have above stated there is no express provision in the Constitution as to special assessments for local improvements.

The legislature in the exercise of its lawful powers has established a special district for drainage and reclamation purposes, and in the exercise of its wisdom and judgment, has divided the lands in the District upon which a charge is to be imposed into three classes or zones for the purpose of apportioning such charges in proportion to the special benefits which such land will receive from the proposed improvements. While the rate varies as to each zone, yet it is equal and uniform as applied to every acre

in each zone; no discriminations in favor of any particu-
lar acre or· tract in any one class or zone being made.
Whether or not this method of apportionment is the most
just and equitable that can be devised, it is not within
the province of the judiciary to determine.

It is not to be denied that a tax or assessment, whether
imposed for the purpose of general taxation or for local
improvement must be uniform in the sense that it must
be imposed upon the property subject to taxation or
special assessment, so that, as in the case of land, the
burden or charge on every parcel will bear a just pro-
portion to that imposed on every other.

As held in Egyptian Levee Co. v. Hardin, 27 Mo.
495,. it is not the province of the judiciary to interfere if
the plans adopted may not distribute the burdens accord-
ing to the measure of benefits, as well as some other
might, when the case does not come·within the constitu-
tional restrictions.   The law making department of gov-
ernment is entrusted with the whole subject; and if
practical injustice is done the remedy is in the hands of
the people.   "Equality of taxation may, however, be re-
garded as one of those Utopian visions, which neither
philosopher nor legislator has ever yet realized.   Ap-
proximation may be arrived at and ought to be."

A case involving the principle of apportionment sim-
ilar to that now under consideration, arose under a Mis-
sissippi statute.   It provided for a levee tax, prescribed
the district of assessment and directed the tax to be laid
by the acre, according to an arbitrary standard of value
fixed by the Act.

Unimproved land was fixed at $5.00 per acre except
in two specified counties, where it was fixed at $3.00 per
acre; the improved lands at $30.00 per acre except in the
same two counties in which it was fixed at $20.00 per

acre.    The Constitution of Mississippi provided that "taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value, to be ascertained as directed by law." This legislation was upheld by the court in Daily v. Swope, 47 Miss. 367. It was held in this case, that the constitutional provision quoted applied only to general taxation and had no reference to special assessments for local improvements; that the legislature could impose a specific tax on the acre, and also declare a rate according to a value ascertained and determined by itself.

In the case of Houck v. Little River Drainage Dist., 248 Mo. 373, 154 S. W. Rep. 739, which was affirmed in Houck v. Little River Drainage Dist., 239 U. S. 254, Sup. Ct. Rep.     , the court said: "It is safe to say that the doctrine is firmly established in this State, that the legislature, acting within its constitutional powers, may fix the territorial limits of special taxing districts, and may also fix the actual or maximum amount of special assessments, which they may place at a level rate, founded upon a unit of area or frontage, or at a rate founded upon proceedings to ascertain the actual benefits accruing to each particular tract."

The Court must assume that in imposing local assessments, whereby the value and desirability of land will be increased the legislature designed to distribute the cost thereof upon the land in proportion to the special benefits it would receive from the system of improvements, unless the scope and meaning of the language employed in the Act drives the judiciary from that assumption. Daily v. Swope, supra.

Sections 2, 3 and 5 of Article IX of the Constitution apply only to general taxation for State, county

and municipal purposes and have no reference to special assessments for local improvements.

The Act of 1915, Chapter 6957, amending Chapter 6456, in respect to exempting certain described land from any charges, was in effect only an alteration of the boundaries of the Drainage District, which as the legislature had power to establish, it also had power to change, and its action in this respect we must assume was founded upon its determination that the exempt lands because of their location and condition either would not receive any special benefit from the system of proposed improvements or else that such improvement would be so remote that the benefits therefrom would not be in proportion to the charges imposed.

This was a power that the legislature might well exercise and cannot affect the constitutional validity of these Acts.

Where a statute does not violate the Federal or State Constitution, the legislative will is supreme, and its policy is not subject to review by the courts, whose province is not to regulate, but to effectuate the policy of the law as expressed in valid statutes. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759.

As sections 20 and 21 Article III and sections 1, 2, 3 and 5, Article IX of the Constitution do not relate to special assessments, they do not limit or restrict the legislative powers in reference thereto, and therefore the Acts attacked are not obnoxious to the cited provisions of the Constitution.

IV. It is insisted that the provision of the Act authorizing the Drainage Commissioners to expend the pro-

ceeds derived from the special assessments, without a special appropriation by the legislature is in violation of section 4 of Article IX of the Constitution, providing that "no money shall be drawn from the Treasury except in pursuance of appropriations made by law."

Without now deciding the right of complainant to raise this question under the state of facts alleged in his bill, yet conceding that the question is properly before us for decision, complainant has failed to point out how or in what manner the statute violates this constitutional provision.

The money raised by the special assessment is not paid in to the general treasury of the State, but is a special fund, placed in the custody of the State Treasurer to be expended for certain specified purposes designated in the Act, as in sections 6, 24 and 25.

The revenue raised by virtue of the Act, is to be used for the purpose of draining and reclaiming the land in the Drainage District in order to render the same more susceptible to cultivation, more habitable and more sanitary, in the interest of the public health, benefit and welfare, as plainly stated in the Act.

The object of such a constitutional provision as the one last referred to is to prevent the expenditure of the public funds without the consent of the people, by their representatives in legislative Acts, and it secures to the legislature the exclusive power of deciding how, when and for what purpose the public funds shall be applied in carrying on the government. 36 Cyc. 891.

An appropriation may be made by setting apart and specially appropriating the money derived from a particular source of revenue to a particular use. Ristine v. State, 20 Ind. 328, text 337.

It seems clear from the Acts under consideration that the legislature intended to, and did appropriate the revenues derived from the special assessment to carry out the very purpose of the Acts.

5. Another contention made by complainant against the constitutionality of the Acts is that the subject of Chapter 6456 is not explained in its title, as, it is claimed, is required by Section 16, Article III of the Constitution providing that "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be expressed in the title."

It is urged by complainant that the title of said Act relates to and contemplates a general law for the establishment of drainage districts throughout the State and the levy of taxes thereon, whereas only a single district by specific description is established by the Act, and an annual acreage tax is levied on certain lands in the District; that the title indicates and presumes a general law, whereas the Act is local and special; and that the title "provides for the assessment of lands to be benefited by assessment of benefits and taxation; whereas the Act fails to make such provision but imposes a special acreage tax, neither uniform nor equal, upon certain and only a part of the lands in such District.

A careful reading of the title of this Act, quoted above, fails to show the existence of the specific objections interposed thereto.

The title of the Act sufficiently expresses its subject, certainly enough so as to give reasonable notice of the matters dealt with by the Act and as to its purpose and scope. The title need not be an index to the Act, it being sufficient if it may reasonably lead to inquiry as to its con-

tents.  Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150;
State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South.
Rep. 929.

6.  Another objection is that the Act violates Sec-
tion 12 of the Bill of Rights, which provides that no
persons shall "be deprived of life, liberty or property with-
out due process of law, nor shall private property be
taken without just compensation," and in addition it vi-
olates section 29, Art. XVI of the Constitution, provid-
ing that "No private property nor right of way shall be
appropriated to the use of any corporation or individual
until full compensation therefor shall first be made to the
owner, or first secured to him by deposit of money." The
violation alleged being the provision of Section 4 of the
Act empowering the Board of Commissioners of the
Drainage District, in the exercise of the right of emi-
nent domain conferred upon it, to enter upon, take and
use such lands as it may deem necessary for the public
powers and purposes of said Board as are granted by the
Act, pending condemnation proceedings.  It is unneces-
sary to determine this question in this case as no fact is
alleged in the bill involving the exercise of this right,
nor is any right of the complainant alleged to be invaded
under this section and even if that part of the Act com-
plained of is unconstitutional, a question which we do
not now pass upon, it would not affect the remaining sec-
tions.  By Section 30 of the Act it is provided that "any
clause or section of this Act which for any reason may
be declared invalid may be eliminated from this Act and
the remaining portion or portions thereof shall be and
remain in full force and valid as if such invalid clause or
section had not been incorporated therein."

It has heretofore been held by this court that if a

duly enacted statute contains provisions that are invalid because in conflict with organic law and such invalid portion may be severed and the remainder of the statute may then be made effective for the purpose designed and will not cause results not intended by the Legislature, and it does not appear that the statute would not have been enacted without the invalid portions, such invalid portions may be disregarded and the valid portions enforced if it can be done to effectuate the legislative intent. Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226.

The court will not pass upon the constitutionality of a part of an act in a proceeding which does not involve the part which is claimed to be unconstitutional, if the part remaining is complete and operative within itself. State v. Newton, 59 Ind. 173; State v. Stuht, 52 Neb. 209.

7. Appellant further contends that the said Acts and the proceedings of the defendants, the said Board of Drainage Commissioners, the Tax Assessor and Tax Collector thereunder, violate Sections 1 and 4 of the Bill of Rights and Section 29 of Article XVI of the Constitution of this State, in that the statute does not provide for any notice to, or hearing of the owners of land in the District respecting the selection of lands assessed under said Act or upon which the acreage tax is imposed; that the Legislature has arbitrarily imposed upon lands of equal and uniform value in said District a different rate of tax and exempted other lands in said district from any tax; and that the said Acts and the actions of said defendants in attempting to levy the said tax on appellant's lands deny to him the equal protection of the

law and deprive him of this property without due process of law.

The ultimate contention of appellant is that his land cannot be subjected to the charge imposed by the Act because he has not been afforded an opportunity of contesting the merits of the apportionment of such charge as made by the Legislature, but that this body has arbitrarily imposed upon lands of equal and uniform value in said District a different rate of taxation.

The power of the Legislature in matters of taxation is unlimited, except as restricted by constitutional provisions. This is one of the attributes of sovereignty which the people have placed in its hands, and they have intrusted its exercise to its discretion, either in the manner, or to the extent to which it is to be applied. This charge imposed upon the land is based upon the theory that it is in return for the benefit received by the property assessed, directly or indirectly. For the purpose of apportioning this benefit the legislature has determined in advance what property will be benefited by designating the district within which it is to be collected, as well as the property on which it is laid, and further apportions the charge imposed by dividing the lands in the District which the legislature has determined will be benefited by the proposed improvements, into three classes or zones, such charge being laid on every acre of land in each zone, and is equal and uniform in each zone, but the rate varies as to each zone.

This method of assessment and apportionment is within the power of the legislative body, and cannot be successfully questioned unless it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power. There is a wide difference between a special tax or assessment for local improvements prescribed

by the legislative body, having full authority over the subject, and one dependent upon the judgment and actions of bodies or instrumentalities acting under delegated powers.

It is reasonable to presume, if indeed it is not obvious, that all lands lying within the Drainage District, whether actually overflowed or not, will be greatly enhanced in value, when the purposes of this legislation have been accomplished, by being rendered far more desirable for habitation and more susceptible to cultivation than in their present natural condition, they being for the most part, as alleged in the bill, now swamp and overflowed lands. At any rate this question is not open to investigation in this case. As stated by the United States Supreme Court, quoting and approving from Spencer v. Merchant, 100 N. Y. 385; "The lands might have been benefited by the improvement, and so the legislative determination that they were, and to what amount or proportion of the cost, even if it may have been mistakenly unjust, is not open to our review. The question of special benefit and the property to which it extends, is of necessity a question of fact, and when the legislature determines it in a case within their general power, its decision must be final. We can see in the determination reached possible sources of error and perhaps even of injustice, but we are not at liberty to say that the tax on the property covered by the law of 1881 was imposed without reference to special benefits. The legislature practically determined that the lands described in said Act were peculiarly benefited by the improvement to a certain specified amount, which constituted a just proportion of the whole cost and expense." Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. Rep. 921. To the same effect is Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. Rep. 521. In Hagar v. Reclamation

Dist. No. 108, 111 U. S. 701, 4 Sup. Ct. Rep. 663, the distinction between a tax or assessment imposed by a direct exercise of the legislative power, calling for no inquiry into the weight of the evidence, nor for anything in the nature of a judicial examination, and a tax or assessment imposed upon property according to its value, to be ascertained by an Assessor, upon evidence, was pointed out, and it was held that in the former case no notice to the owner is required, but that in the latter case, the officers in estimating the value act judicially and notice and opportunity to be heard are necessary.

In Embree v. Kansas City & Liberty Boulevard Rd. Dist., 240 U. S. 242, text 250, 36, Sup. Ct. Rep. 317, 60 L. Ed. 624, Mr. Justice VAN DEVANTER in delivering the opinion said: "The claim that the land owners are entitled to a hearing on the question of whether the benefits in the different zones will be in accord with the graduated ratings of their lands, is not seriously pressed upon our attention and requires but brief notice. The ratings are not fixed in the exercise of delegated authority, but by the statute itself, which must be taken as a legislative determination that in a district lawfully constituted the benefits to the lands in the different zones will be in approximate accord with the ratings named. This being so, no hearing is essential to give effect to this feature of the apportionment. A legislative Act of this nature can be successfully called into question only when it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power.

The reclamation of the vast body of swamp and overflowed land in the Everglades Drainage District is a public improvement of great magnitude and of the utmost importance to all interested in the lands lying within the District. If left to individual initiative it probably would

never be accomplished. The fact that such improvement may not be of direct benefit to every parcel of land within the District constitutes no just reason why it should not bear its portion of the expense incurred in the work of drainage and reclamation of the District as a whole; and the further fact that some of the lands are not overflowed, is not conclusive that they receive no benefit.

"If it be essential or material for the prosperity of the community, and if the improvement be such that all the landholders have to a certain extent a common interest, and the improvement can not be accomplished without the concurrence of all or nearly all of such owners, by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their common expense. In such case the absolute right of each individual owner of land must yield to a certain extent, or be modified by corresponding rights on the part of other owners, for what is declared, upon the whole, to be for the public benefit." Fallbrook v. Irrigation District v. Bradley, 164 U. S. 112.

In the decision of this case we do not hold that the courts are not open to review every exercise of legislative power or determination, for as it is said in Wagner v. Leser, 239 U. S. 207, 60 L. Ed. 230. "We do not understand that there may not be cases of such flagrant abuse of legislative power as would warrant the intervention of a court of equity to protect the constitutional right of land owners, because of arbitrary and wholly unwarranted legislation."

In the present case, the facts alleged in complainant's bill are not sufficient to show that there is such a disproportion between the charges imposed upon his land and the benefits that may well be presumed will be conferred

it by the drainage and reclamation work contemplated by the Acts under consideration, as to render it apparent that in fixing the rates prescribed by the statute, the legislature has acted so unreasonably and arbitrarily, with respect to complainant's land, as that the charge imposed upon it constitutes "a flagrant abuse of legislative power."

We are unable to see that the Act of the legislature in question, or the manner of their enforcement operate to deprive complainant of any right secured to him by any of the provisions of the constitution of this State.

The order appealed from is affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD AND WHITFIELD, J. J., concur.  ELLIS, J., disqualified.