### JACKSONVILLE GAS CO. v. CITY OF JACKSONVILLE et al.

(District Court, S. D. Florida, at Jacksonville. January 25, 1923.)

1. **Constitutional law ⬚242, 298(7)—Gas ⬚14(1)—Gas company, not given hearing before city commission before rates fixed, not denied due process or equal protection, when it had right of appeal.**

   Sp. Acts Fla. 1921, c. 8974, providing for the fixing of gas rates by the city commission of Jacksonville, and for appeal to the Railroad Commission, or the action of the commission thereunder, in fixing gas rates, without giving a gas company any hearing, did not deny it due process of law, or the equal protection of the laws, in violation of Const. Amend. 14, where it was given the prescribed notice, and had opportunity to appeal to the Railroad Commission, where it could have had a hearing.

2. **Gas ⬚14(1)—Administrative duty of fixing rates held not in fieri, so as to prevent judicial review.**

   Where the city commission of Jacksonville, under Sp. Acts Fla. 1921, c. 8974, fixed gas rates without hearing evidence, and no appeal was taken by the gas company to the Railroad Commission, as authorized by the statute, the administrative duty of fixing the rates *held* not still in fieri, so as to prevent the case from being ripe for judicial review of the question whether the rates fixed were confiscatory.

3. **Gas ⬚14(1)—Going concern value not considered in ascertaining just rates.**

   A gas company's going concern value cannot be considered as a part of the base for rate-making purposes.

4. **Gas ⬚14(1)—Rates allowing earnings of 8 per cent. not confiscatory.**

   Gas rates, as fixed by a city commission, were not confiscatory, where they allowed the gas company to earn about 8 per cent. per annum on the value of its property or investment.

5. **Gas ⬚14(1)—Allowance for leakage held sufficient.**

   In fixing gas rates, an allowance for leakage of 10 per cent. of all gas manufactured, as a part of the cost of delivery, was sufficient.

6. **Statutes ⬚103—Act providing for appeal from city commission to Railroad Commission held not special or local law, regulating jurisdiction and duties of any class of "officers."**

   Sp. Acts Fla. 1921, c. 8974, authorizing the city commission of Jacksonville to fix gas rates, with right of appeal to the Railroad Commission, does not violate Const. Fla. art. 3, § 20, prohibiting special or local laws regulating jurisdiction and duties of any class of officers, which undoubtedly refers generally to county officers, and not to a board having comprehensive state-wide jurisdiction.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Courts ⬤═366(1)—Interpretation of state Constitution by state court followed by federal court.**

The interpretation by the state Supreme Court of a provision of the state Constitution prohibiting local and special laws in certain cases must be followed by a federal court.

**8. Injunction ⬤═157—Stay order or supersedeas not granted, on denial of interlocutory injunction, to enable charging of rate higher than any theretofore charged.**

On denial of an interlocutory injunction restraining the enforcement of an order of a city commission fixing rates, a stay order or supersedeas will not be granted, where it is the purpose of the gas company, if freed from such order, to establish a rate higher than any heretofore charged, even when the company was at liberty to make its own rates.

**9. Gas ⬤═14(1)—Public entitled to gas at reasonable worth, and company to income sufficient for maintenance, expenses, and fair dividend.**

The public is entitled to have gas furnished at the reasonable worth of the service of furnishing it, and the gas company to be allowed to earn an income sufficient for maintenance, expenses, and a fair dividend on the investment.

In Equity. Suit by the Jacksonville Gas Company against the City of Jacksonville and others. On application for interlocutory injunction. Application denied.

For opinion on previous application, see 284 Fed. 854.

John E. & Julian Hartridge and F. P. Fleming, all of Jacksonville, Fla., for plaintiff.

P. H. Odom and L. W. Strum, both of Jacksonville, Fla., for defendants.

Before BRYAN, Circuit Judge, and CALL and CLAYTON, District Judges.

CLAYTON, District Judge. Application was heretofore made in this cause for interlocutory injunction which was denied. Jacksonville Gas Co. v. City of Jacksonville et al., 284 Fed. 854. It is now submitted for the same purpose upon the bill as amended and supporting affidavits and the denials of the answer and affidavits in that behalf.

[1] The plaintiff seeks to restrain the enforcement of, and to have declared invalid, the order of the city commission fixing the rates of charges for gas that the plaintiff manufactures and sells to the public. The commission was empowered to do this by the act of the Legislature known as chapter 8974, Laws of Florida, 2 Sp. Acts 1921, p. 1431. It is insisted that this law and the action of the commission thereunder are hostile to the Fourteenth Amendment of the Constitution, because, as it is alleged, no provision was made for the hearing of the plaintiff, and that, the order being enforced, the plaintiff is and will be deprived of its property without due process of law, and denied equal protection of the laws. We adhere to the opinion that this contention is unsound. It is plain that the commission was duly authorized to fix the rates complained of, and it is equally manifest, if the rates were deemed unfair, that appeal to the Railroad Com-

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mission was provided, and that body, being vested with the appropriate power, could, after a hearing, have supervised the action of the city commission and established just rates, if unjust rates had been fixed. When the city commission determined the rate which it was proposed to enforce, then the prescribed notice was given to the plaintiff, and the required publication for 60 days of the order was made, as provided by the act, so as to afford an opportunity to the plaintiff to appear before the Railroad Commission, the ultimate rate-making body, in case the order of the city commission was not acquiesced in, but appealed from.

However, it is insisted that the plaintiff gas company was not present or represented while the city commission was making its investigation in order to determine the rates. The affidavits submitted by the defendant, to say the least, tend to contradict such contention. But, however that may be, the important truth is that, in ascertaining what rates should be put into effect, the city commission had authority to adopt its own method of procedure, and the presence of the plaintiff gas company during the consideration by the commission was not essential to the validity of the order made. The authorizing act provided a hearing for the plaintiff, for it could have had the rates inaugurated by the city commission supervised, and, if need there was, corrected, by the Railroad Commission, as we have said. The plaintiff, however, elected not to appeal to that commission. Therefore it cannot now complain that it was denied due process of law, for it failed to avail itself of the orderly procedure provided by appeal, and the remedy of correction by the Railroad Commission. So now, in the hearing of the application for injunction pendente lite, the rates fixed by the city commission must be regarded, so far as process is concerned, as having been lawfully established by a competent administrative body. Hence no violence has been done to due process, and the case is reduced to the consideration of the allegation that the rates established are so low as to be confiscatory. Thus a judicial question is presented, just as if the Railroad Commission had determined the rates.

[2] The plaintiff contends that the city commission did not make any finding of fact upon which to base the rate of $1.65, or that such rate established was not based on testimony taken before the commission, or upon evidence filed with it, or upon any reasonable method bearing relation to fixed and operating charges, or upon any standard or rule developed by experience of operation or general use. To follow this contention to its logical end would be to reach the conclusion insisted upon by the defendants that the exercise of the administrative duty of fixing the rates is still in fieri, or that the administrative duty has not been performed in a final way; and hence the defendants contend that the bill of complaint is prematurely filed, that the administrative power has not been exhausted or fully exercised, and that, therefore, the plaintiff has no such standing in this court at this time which permits the exercise of the judicial function. The plaintiff cites Wichita R. & L. Co. v. Public Utilities Commission, 43 Sup. Ct. 51, 67 L. Ed. ——, decided November 13, 1922, by the Su-

preme Court. We do not think that the view urged by the plaintiff or that insisted upon by the defendants is sound, or that the Wichita Case has any bearing upon the instant case. Therefore, as we have held above, the time in this case is now ripe for the exercise of judicial review of the matter, and for determining whether or not the rates fixed by the city commission are confiscatory.

[3] The plaintiff's allegations of valuation are rather indefinite. The items which make up such valuation should have been stated with more particularity. Conceding, however, that they are sufficient, still the bill shows that of this valuation the item of $475,000 as a going concern value is included in the aggregate valuation. If this item be not properly included, or if it must be eliminated for the purposes of this case as now presented, then the plaintiff has failed to show the taking or the threatened taking of its property without just compensation. That going concern value cannot be considered as a part of the base for rate-making purposes seems to us to be no longer in the realm of disputation. In Galveston Electric Co. v. Galveston, 258 U. S. 388, 42 Sup. Ct. 351, 66 L. Ed. ——, decided April 10, 1922, it appears to be settled that the going concern value cannot be considered in ascertaining just rates. The elimination of the item for going concern value compels a denial of interlocutory injunction.

[4] If we descend somewhat to particulars, it is disclosed by the pleadings and evidence that, in fixing the rate of $1.65 per 1,000 cubic feet of gas, the City Commission allowed a going concern value equal to 10 per cent. of the physical value of the plaintiff's property, and in addition thereto also made allowance for working capital and overhead expenses. The commission allowed:

| | |
|---|---:|
| A physical value of | $2,166,277.91 |
| Overhead allowance | 324,941.69 |
| Total physical property | $2,491,219.60 |
| Working capital | 200,000.00 |
| Aggregating | $2,691,219.60 |
| Going concern value allowed | 269,121.96 |
| Grand total, tangible and intangible property | $2,960,341.56 |

And the proof in the case shows, or tends to show, that upon this property or investment the plaintiff is allowed to earn 8 per cent. per annum, or about that per cent. It follows that the prescribed rate, affording such reasonable return upon the property, is not confiscatory. Indeed, it was held in Galveston Electric Co. v. Galveston, supra, that a less rate was lawful. So it was likewise determined in Des Moines Gas Co. v. City of Des Moines, 238 U. S. 153, 35 Sup. Ct. 811, 59 L. Ed. 1244, and Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034.

[5] For the leakage as a part of the cost of delivery of gas the commission allowed 10 per cent. of all the gas manufactured, and this was sufficient. City of La Crosse v. Wisconsin-Minnesota Light & Power Co., P. U. R. 1922B, 113.

[6] Plaintiff urges that the act assailed is void, for that it transcends section 20, art. 3, of the Constitution of Florida. That section forbids the Legislature to pass any special or local law in the enumerated cases, and among these are named such special or local law "regulating the jurisdiction and duties of any class of officers," etc. It is to be borne in mind that at the time of the adoption of the Constitution the Railroad Commission had not been established. That body was merely authorized by the organic law; and it is to be assumed as true that, in prohibiting special or local legislation with reference to classes of officers, the law as expressed in the instrument had reference to the officers recognized in or established by the instrument, the Constitution. Moreover, that the Railroad Commission is a board, made up of officers it must be said, but that the board itself is a different thing from the individual officers of which it is composed.

[7] Besides, the constitutional inhibition is not so much against the imposition of duties or against the conferring of jurisdiction upon officers, but its real object was the prevention by special or local legislation of the imposition of any duties and jurisdiction upon classes of officers created by the Constitution or so recognized therein as to be in law creatures of the Constitution. It is to state the familiar that the word "class," employed in the instrument, must be given a meaning. Now, giving it a meaning and a working duty, it undoubtedly refers to such officers as sheriffs, county judges, circuit court judges, and, generally, to county officers provided by the Constitution. Manifestly, the intention was that the Legislature should not by local or special legislation regulate the jurisdiction or duties of such officers in one county, and not do the same thing in the case of such officers in another county. It has no application to a board having comprehensive state-wide jurisdiction such as that conferred upon the Railroad Commission. This question was settled by the Supreme Court of Florida in the case of Lainhart v. Catts, 73 Fla. 735, 75 South. 47, for it was there held that the conferring of powers upon a board of commissioners of drainage districts was not in hostility to section 20, art. 3. And we must as a federal court follow this interpretation of the state Constitution.

[8] In Cumberland Telephone Co. v. Public Service Commission of Louisiana, 43 Sup. Ct. 75, 67 L. Ed. ——, decided by the Supreme Court of the United States November 20, 1922, it was held that the three judges constituting such tribunal as this were vested with the discretion, upon the denial of the interlocutory injunction, to withhold or grant a stay order or supersedeas. Application has been made in this case for such order in the event of denial of interlocutory injunction. Exercising the discretion vested in us, we are of opinion that under all the facts and circumstances it should not be granted. It was frankly avowed in the oral argument before us that it was the purpose of the plaintiff if freed from the order of the city commission to install a base rate of $1.85 per 1,000 cubic feet of gas, without reduction. It was made apparent that such rate would be higher than that ever heretofore charged by the plaintiff, even when it was at liberty to make its own rates. In Galveston Electric

Co. v. Galveston, supra, the Supreme Court in speaking of the reduction of prices in the nearly three years which elapsed just before the opinion was delivered, said that—

"We know judicially that the period has, in general, been one of continuous price recession, and that the current rates of return on capital are much lower than they then were. But we cannot know to what extent the important changes occurring have affected either gross revenues or net return. There is no reason to believe that the board would not give full and fair consideration to a proposed change in rate, if application were now made to it, and the District Judge stated in his opinion (272 Fed. 147) that the decree to be entered would be vacated or amended in case it should later appear that the regulating board declined such adjustment of rates as the actual experience of the utility might show it entitled to, and the decree was thereupon entered without prejudice."

[9] Of course, whether or not the rates prescribed are reasonable depends upon the facts and circumstances. The public is entitled to have the gas services rendered at their reasonable worth, and the gas company must be allowed to earn an income sufficient for maintenance, expenses, and a fair dividend to its stockholders upon the investment.

Decree will be entered, denying interlocutory injunction and stay order.