QUESTIONS: 1. May a special fire district be set up within a noncharter county to be funded by an additional levy of ad valorem taxes? 2. May this district be approved by the voters within the district by a referendum? 3. What is the procedure for setting up such a district and holding the election?
SUMMARY: A special fire district or a municipal service taxing unit may be established by noncharter county ordinance to be funded by a levy of ad valorem taxes for the district or municipal service benefit unit within the limits of a millage approved by vote of district electors, not to exceed 10 mills for districts or municipal service taxing units within the unincorporated area of the county, and subject to conditions stated in Chs. 74-191 and 74-192, Laws of Florida, amending Ch. 125, F.S., and other controlling statutes and constitutional provisions. The first and second questions presented by you are, subject to qualifications hereinafter stated, answered in the affirmative by several provisions of Ch. 125, F.S., as amended by Ch. 74-191, Laws of Florida, and Ch. 165, F.S., as enacted by Ch. 74-192, Laws of Florida, as follows: 125.01 Powers and duties. — (1) The legislative and governing body of a county shall have the power to. . . . (q) Establish . . . municipal service taxing or benefit units for any part or all of the unincorporated area of the county within which may be provided fire protection, law enforcement . . . and other essential facilities and municipal services . . . this paragraph is the authorization for all counties to levy additional taxes within the limits fixed for municipal purposes within such municipal service taxing units under the authority of the second sentence of Article VII, Section 9(b) of the state constitution. (r) Levy and collect taxes, both[1] for county purposes and[2] for the providing of municipal services within any municipal service taxing unit . . . which power shall be exercised in such manner, and subject to such limitations as may be provided by general law. . . . (5)(a) . . . the governing body of a county shall have the power to establish . . . special districts for any part or all of the county, including incorporated areas if the governing body of the incorporated area affected approves such creation by ordinance, within which may be provided municipal services and facilities from funds derived from . . . taxes within such district only . . . . (c) . . . this subsection is the authorization for the levy by a special district of any millage designated in the ordinance creating such a special district . . . and approved by vote of the electors under the authority of the first sentence of Article VII, Section 9(b) of the state constitution. 165.041 . . . (2) A charter for creation of a special district shall be adopted . . . by ordinance of a county or municipal governing body having jurisdiction over the area affected . . . . 165.061 . . . (3) The creation of a special district must be the best alternative available for delivering the service and be amenable to separate special district government if such district is to have a governing body other than a county or municipal governing body . . . . 165.081 Judicial review. — All special laws or ordinances enacted . . . pursuant to this part shall be reviewable by certiorari pursuant to the provisions of section 120.31, F.S., or its successor . . . . 165.071 . . . (3) The dissolution of a . . . special district shall transfer the title to all property . . . to the county . . . . The county is specifically authorized to levy and collect ad valorem taxes . . . from the area of the pre-existing . . . special district for repayment of any assumed indebtedness through a special purpose taxing district created for such purposes. (Emphasis supplied.) A special fire district funded by ad valorem taxes can accordingly be established by county ordinance subject to the varying conditions imposed by the cited statutes, depending upon whether the area served covers only the unincorporated area in whole or in part or also includes incorporated area, and subject to referendum approval of ad valorem taxes which in form or substance constitute district taxes as detailed below. Fire protection service is expressly within the enumerated county governmental powers, s.125.01(1)(d), as well as the municipal purposes which a county may perform pursuant to s. 125.01(1)(q), subject to constitutional referendum requirements for ad valorem taxes which are imposed as district or municipal service unit taxes. The question of whether the district "can be approved" by referendum has been answered affirmatively, when an ad valorem tax is to be levied, by an earlier opinion in the case of special taxing districts created by act of the Legislature, the conclusion being that even in the absence of express statutory provision for referendum on a special district ad valorem tax millage authorization, Art. VII, s. 9(b), State Const., provides both the authority and mandate for referendum prior to such a tax levy. Attorney General Opinion 071-310. The same principles not only permit but require referendum prior to levy of an ad valorem tax for a district created by ordinance under the laws hereinabove quoted. Although great particularity of terminology is employed throughout the new enactments, supra, to distinguish between municipal service "taxing units" and "special districts," I would conclude that the status and function of such units for the purpose of ad valorem tax levies must be evaluated on the basis of function and not title. A recent decision of the Florida Court reasons similarly: "As Shakespeare said: `What's in a name? That which we call a rose by any other name would smell as sweet.'" Scholastic Systems, Inc. v. LeLoup, et al., Case #45,320, Fla. Sup. Ct., Oct. 24, 1974, !mLN!x So.2d !mLN!x. In the event, therefore, that you intend to inquire whether the county may levy a tax for services within a "taxing unit" under s. 125.01(1)(r), supra, without referendum, I believe, in the absence of any express provision in the law that no referendum shall be required, that the same constitutional problems delineated in AGO 072-162 still require approval by electors within the taxing unit. If the newly adopted legislative act had contained an explicit negative provision, i.e., that no referendum shall be required, then my responsibility in the area of potential constitutional problems would be considerably altered. The burden of those risks would then have been placed plainly and openly upon the members of the Legislature adopting a provision negating electoral rights. That, however, is not the case, and I remain uncertain as to whether that result has been the clear and intentional legislative choice. The taped records of legislative debate on the act in question, which have been monitored by my staff in an effort to consider all available resources, reflect no comment, consideration, or explanation on referendum issues other than those involved in merger and dissolution provisions of the new enactments. There seems to me to be a considerable difference between provisions which indicate generally that a described unit shall not be called a special district as compared with an explicit provision (which does not appear in the law but by means of which any such legislative intent could easily have been made plain) that such unit shall not be subject to constitutional requirements for special district taxing powers. I recognize, of course, the expressed legislative intent that s. 125.01(1)(q), F.S., shall constitute an implementation of the final sentence of Art. VII, s. 9(b), State Const., providing that in addition to the maximum 10 mills for all county purposes, a county may be authorized to "levy additional taxes within the limits fixed for municipal purposes." This constitutional language was relied on in Dade County v. Dickinson,230 So.2d 130, 135-6, (Fla. 1970), as the basis for a uniform county levy, the Court noting that such "home-rule provisions in Article VII [the tax article] . . . were . . . a means of accommodating home-rule areas within the taxation limits." The home rule areas cited specifically by the court at this point in the opinion were the existing constitutional amendments pertaining to charter counties. Even if this provision of s. 9(b) may also be relied on to authorize an additional 10-mill tax by "all counties" which make a levy "within any municipal service taxing unit" in the unincorporated area, s. 125.01(1)(r), supra, there is no indication in the text or history of Article VII that a "taxing unit" in that situation, covering a defined portion of unincorporated area, could be anything other than a special district taxing unit subject to the unequivocal requirement of s. 9(b) that any special district millage authorized by law must be approved by vote of the district's electors. To conclude otherwise would place the second part of the tax authorization of s.125.01(1)(r) in direct collision, as a tax by the county as a county "taxing unit," with the mandate of Art. VII, s. 2, State Const., that "all ad valorem taxation shall be at a uniform rate within each taxing unit." This requirement, by clear wording and historical application, relates to a taxing unit and not to a taxed unit. The taxing unit must necessarily be either the county or a special district, no other local taxing units being listed by Art. VII, s. 9(a), other than school districts and municipalities. Cf.Rileigh v. Pinellas County, 200 So.2d 165 (Fla. 1967). The enumeration in s. 9(a) of units in which taxing power may be vested by law, like other constitutional specification of permissible objects of legislation such as tax exemption, would under the Florida cases be construed to preclude provisions not within "those particularly mentioned classes specified in the organic law itself." L. Maxcy, Inc. v. Federal Land Bank,150 So. 248, 250, (Fla. 1933). This implicit limitation of classes of taxing units is particularly applicable when considered in conjunction with the initiation, by the 1968 Constitution, of millage restrictions for specified purposes contained in s. 9(b), giving express recognition to special district taxation not mentioned in the prior constitution. Cf. Lainhart v. Catts,75 So. 47, 52, (Fla. 1917). In the absence of an effective political right or remedy of district electors, or an elected general governmental body for the district, there are obvious reasons for the new constitutional safeguard by district referendum on taxes, in an organic law designed to permit broad home rule authority in local governments which may now create and govern such districts: The only security against the abuse of [taxing] power is found in the structure of the government itself. In imposing a tax [a governing body] acts upon its constituents. . . . The people . . . rest . . . confidently upon . . . the influence of the constituents over their representatives to guard them against this abuse. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316-428 (1819). Except for the procedures specified in the laws above quoted, I find no helpful guidelines for conduct of such a referendum other than notice provisions stated in s. 100.342, F.S.