A. C. REDMAN, *Appellant, v.* W. C. KYLE, R. O. WATSON AND A. B. LOWE, AS THE BOARD OF SUPERVISORS OF THE NAPOIEON B. BROWARD DRAINAGE DISTRICT, *Appellees.*

Opinion filed July 2, 1918.

-Petition for Rehearing Denied January 9, 1919.

1. In the absence of a provision for the enforcement of an assessment in the nature of a judicial proceeding, in which notice is given to owner of property affected and a fair and full opportunity afforded him to be heard therein on the merits of the assessment, it is necessary, before a tax is levied and becomes a lien upon land, as the result of the determination of somebody or instrumentality acting under delegated powers, that those who are to pay the tax or the owner of the land against which the assessment is to be enforced, should have notice of the tax to be imposed and an opportunity given him to contest the merits of the assessment.

2. Section 7, Chap. 7430, of the Acts of 1917, which authorizes the Board of Supervisors of a Drainage District, to impose a tax, not to exceed a stated maximum amount, for the purpose of paying expenses of making surveys of the district, assessing benefits and damages resulting from the proposed drainage and reclamation work and to pay other expenses necessarily incurred, to be estimated by such Board, acting under delegated powers, violates the constitutional provision that no person shall be deprived of property without due process of law, when such tax is assessed and levied without notice to the owner of the property on which such tax is imposed, or affording him an opportunity to contest the merits of the assessment.

3. In a Statute creating a lien on land within a local drainage district for taxes imposed to pay the preliminary expenses incurred prior to the actual drainage and reclamation work,

the amount of which taxes is determined by a Board acting under delegated powers, a provision for the enforcement of such lien by a suit in equity, but providing that "no informality or irregularity in holding any of the meetings provided herein, or valuation, or assessment of the lands, or in the name of the owners of the lands, or in the number of acres therein shall be a valid defence" does not accord to owners of land affected by such tax the opportunity to be heard with respect to the assessment and its levy, or the fair and full opportunity to contest the tax claimed, or to be heard respecting the judgment sought, that is afforded by the constitutional provision against depriving any person of his property without due process of law.

4  Section 12 of the Declaration of Rights in the Constitution, providing that "no person shall be deprived of life, liberty or property without due process of law," assures that no one shall be divested of his property as a result of a suit, either judicial or in its nature judicial, without a fair and full opportunity to contest the claim set up against him, to meet it on the law and the facts, and to show, if he can, that the pretext for making it is unfounded; and the hearing allowed must be such as is practicable and reasonable in the particular case and not merely colorable or illusory.

Appeal from Circuit Court for Broward County, E. B. Donnell, Judge.

Judgment reversed.

*W. I. Evans,* for Appellant;

*Atkinson & Burdine,* for Appellees.

Love, Circuit Judge.—This is an appeal from a final decree of the Circuit Court from Broward County, sustaining a demurrer to the amended bill of complaint and

dismissing such bill. The suit was brought by appellant to enjoin the collection of a uniform tax of twenty-five cents per acre levied upon all of the lands within the Napoleon B. Broward Drainage District, by the Supervisors of such District, for the purpose of paying certain preliminary expenses to be incurred as designated in the Act creating such District; and appellant, further, assails the constitutionality of the Act upon several grounds stated in his bill and argued in the brief of counsel. This District was established directly by the Legislature by Chapter 7430, Acts of 1917, and its territorial boundaries therein definitely prescribed, embracing land lying within the Counties of Broward and Dade. A governing body, consisting of three members designated as a Board of Supervisors, was created, and its members specifically named in and by the Act; and, as the bill alleges, the appellees qualified as such Board of Supervisors and are acting in that capacity. It is further alleged that the said Board, immediately after the organization of the said District, without notice to the owners of land within the District, levied a uniform tax of twenty-five cents per acre upon each acre of land within the District, under the provision of Section 7. of said Act, which prescribes that the Board of Supervisors of the District, as soon as organized, shall levy a uniform tax, not exceeding fifty cents per acre, upon each acre of land within the District, which tax shall become a lien upon the land upon which it is assessed from the date of its assessment. Said amended bill charges that the land in the District varies in value; that a large part of the land in the iDstrict will receive greater benefits from the drainage and reclamation work contemplated than other parts, of which latter, the land owned by complainant in the District, is a part; that

other large parts of such land will be damaged by such work, while still other land in the District will receive no benefit therefrom; that complainant's land is less valuable than much of the other land in the district, and that because of location and natural condition, complainant's land will not receive such benefit from the prosecution of the reclamation work provided for in the Act, as other lands in the District; that the tax in question has been levied against every acre in the District as a uniform tax, without regard to relative value or to benefits and damages resulting from the prosecution of the proposed work, and that defendants are threatening to foreclose said lien and to cause complainant's land to be sold to satisfy same. It is further charged in the bill that the said Act does not provide for notice to be given to the owners of land in the District prior to the levy of such uniform tax; that no notice was given to such owners before such tax levied and assesed and that such owners have been afforded no opportunity to object to such assessment, to contest its fairness or question the amount to be raised for the purposes stated in the Act, and that thereby the said Act authorizes the taking of property without due process of law.

Section 7 of the Act in question provides as follows:

"The said Board of Supervisors, as soon as organized, shall levy a uniform tax of not exceeding fifty cents per acre upon each acre of land within the District to be used for the purpose of paying the expenses incurred, or to be incurred in making surveys of the District and assessing benefits and damages and to pay other expenses necessarily incurred, as may be estimated by the said Board and Chief Engineer before said Board shall be empowered by subsequent provisions of this Act to pro-

vide funds to pay the total costs of work and improvements of the District. Such tax shall be due and payable as soon as assessed and shall become delinquent ninety days thereafter. It shall become a lien upon the land against which it is assessed from the date of assessment, and shall be collected in the same manner as the annual installment of tax. In case the sum received for such assessment exceed the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the District and used to pay cost of construction. Provided, that if it shall appear as necessary to obtain funds to pay any expense incurred or to be incurred before a sufficient fund can be obtained by the collection of said uniform tax, the Board of Supervisors may borrow a sufficient amount of money to meet emergencies at a rate of interest not to exceed eight per cent. per annum, and may issue negotiable notes or bonds therefor, signed by the members of the Board, and may pledge any and all assessments made under the provisions of this section for the repayment thereof, said Board of Supervisors may issue to any person or persons, performing work or services or furnishing anything of value in the initial operation of said District, negotiable evidence of debt, bearing interest at not exceeding six per cent."

Section 20 of the Act provides for the enforcement of the lien on land for delinquent taxes in chancery, and such proceedings and any judgment rendered therein shall be enforced solely against the land by sale thereof. Notice of the pendency of the suit is required to be given by publication in a newspaper published in the County where such suit may be pending, once each week for four consecutive weeks, before judgment for the sale of said land may be entered. It is further provided that

the pleadings, process, proceedings, practice and sale in cases arising under said Act shall, except as therein provided, be the same as in an action for the enforcement of other liens or mortgages upon real estate. By Section 21, it is provided that in such suits "no informality or irregularity in holding any of the meetings provided herein, or valuation or assessment of the lands, or in the name of owners, or the number of acres therein, shall be a valid defense."

The purposes for which this uniform tax is to be levied, as stated in Section 7 of the Act, are "for paying the expenses incurred or to be incurred in making surveys of the District, assessing benefits and damages accruing to the lands in the District as a result of the reclamation plan and to pay other expenses necessarily incurred, all of which may be designated as preliminary expenses, before any of the actual work of drainage and reclamation shall be undertaken. There is no provision in the Act as to the method or manner in which the amount of such preliminary expenses are, even approximately, to be ascertained by the Supervisors. Upon the assumption that the assessment or tax provided for in Section 7 of the Act, is legal and valid, there is ample authority as far as the Act is concerned, for the Supervisors to fix such tax at any amount up to fifty cents per acre on the lands within said District, and this may do without any inquiry or investigation, arbitrarily and in secret, if they choose, without notice to any person or affording an opportunity for a hearing of the land owners in the District, who may be required to pay these expenses, and who, it is to be presumed, are not only materially and vitally interested in the result of the drainage and reclamation plan to be adopted and followed, but who are also equally interested in seeing that these preliminary ex-

·penses are no greater than the necessities of the case require. Neither is there any provision in the Act requiring any public record of the tax or assessment whereby the landowners may be apprised of the tax levied on his land, nor any form of notice whatever to the land owner of the levy of such tax, its amount or when the same is payable, even after it is fixed, prior to the institution of a suit to enforce its collection. No stated time is fixed for the meeting of the Supervisors at which the tax in question is to be levied, and, if the Supervisors should so choose, such meeting might be held behind closed doors and in secret. The statute provides that the tax should become a lien upon the land against which it is assessed from the date of such assessment and shall become delinquent within ninety days thereafter, whereupon suit for its collection may be instituted. As a result the taxpayer, as far as the Act is concerned, is to be given no notice of such assessment, its amount or when it is due and payable, before the institution of suit for its enforcement, with all the costs and expenses thereof following as an attendant and necessary consequence.

It is not here disputed that the Legislature may impose a special assessment and fix the rate thereof on lands in a duly established drainage district by the valid exercise of its legislative power, without giving notice to, or affording an opportunity to be heard by, the owners of the land upon which such assessment is imposed. But, it was said in Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47, text 55, "there is a wide difference between tax or assessment for local improvement prescribed by the legislative body, having full authority over the subject, and one dependent upon the judgment and action of bodies or instrumentalities acting under delegated

powers." Where, as in the present case, the tax is levied
upon land at a rate not specifically fixed by the legislative body, but which rate is fixed by a Board of Supervisors, dependent upon the amount to be raised for the
stated purposes, involving, at least, an estimate and an
exercise of judgment by such Board, it would be a dangerous doctrine to hold that absolute power resides in
such a tribunal, to levy a tax in any such amount as it
might choose, even if within restricted limits, without
giving notice to the owner of such land and affording
him an opportunity of being heard as to the necessity
of raising the amount determined upon by such body. It
would be a power which could, and indeed is likely to
be greatly abused, and the general principles of law applicable to such bodies are opposed to the exercise of
any such powers. In the absence of a provision for the
enforcement of the assessment in the nature of a judicial
proceeding, in which notice is given to the property owner
and a full and fair opportunity afforded him to be heard
upon the merits of the assessment, it is manifestly prope·,
that before the tax is levied and becomes a lien upon th·;
land, as a result of the determination of some body or
instrumentality acting under delegated powers those who
are to pay the tax or who own land against which the
assessment is to be enforced, should have notice of the
tax to be imposed and have an opportunity of being heard
as to the amount necessary to be raised for the purposes
stated in the Statute.

Counsel for appellees contend that when the maximum
amount of the tax or assessment is fixed by the Legislature, then no notice is required to be given of the imposition of such tax and cites the case of Houck v. Little River
Drainage Dist., 248 Mo. 373, 154 S. W. Rep. 739, as authority for this proposition. The cited case differs from

the one now under consideration. In the former, the District was organized pursuant to a judgment of court, based upon proceedings as to which the owners of land in the District had notice. The Supreme Court of the United States in affirming this case distinctly says that, because of the provision for such notice, the question as to the constitutionality of the tax "cannot properly be regarded as one of notice." Houck v. Little River Drainage Dist., 239 U. S. 254, text 264, 36 Sup. Ct. Rep. 58, 60 L. Ed 266, text 274.

In the present case the Drainage District was created directly by the Legislature and no notice was given to the owners of the land included within it of the proposed creation of the District nor was an opportunity afforded them to object to any of the proceedings, the amount of the tax to be assessed or the rate to be levied, which rate may be placed at any amount not to exceed fifty cents per acre, as may be determined by the Board of Supervisors of the District.

The case of Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47, also cited by appellees as being opposed to appellant's contention, is not in point, as the tax or assessment considered in that case was fixed at a definite, stated amount by the Legislature, leaving nothing to be determined by any subordinate body acting under delegated power, before the tax should be levied. In the instant case the Supervisors are to determine, not only the aggregate amount to be raised for the preliminary expenses to be incurred under Section 7 of the Act, but in making up such amount, they are to determine the various amounts to be expended for the several items mentioned as constituting such preliminary expenses, and to raise such amounts may impose such rate of taxation not to exceed fifty cents per acre as they may choose. Under such

circumstances, it is held in Londoner v. City and County of Denver, 210 U. S. 373, 28 Sup. Ct. Rep. 708, 52 L. Ed. 1103, that, "where the Legislature of a State, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessments and apportionments, due process of law requires that, at some stage of the proceedings, before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice."

It is further contended by appellees that, though the Act in question does not provide for notice prior to such tax becoming a lien upon the land against which it is assessed, yet by reason of the provision for enforcing such lien by suit, in the Circuit Court for the county in which such land is situated, notice of which suit is to be given by publication, as provided in Section 20 of the Act, all owners of land affected by the tax would have an opportunity to be heard in such suit before such land by the judgment of such Court could be subjected to sale to enforce the lien for the unpaid taxes thereon. In support of this contention, appellees cite Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775, in which the following quotation from 1 Page & Jones on Taxation by Assessment, Sec. 132, was approved by this Court: "If the proceedings to enforce the assessment is in the nature of a judicial proceeding in which notice is given to the property owner, and a full opportunity given to him to be heard upon the merits, such proceeding constitutes due process of law and no prior notice seems to be necessary." This was a case brought by a contractor against the owner of a lot of land for the enforcement of a lien on such lot for the expenses of constructing sidewalks and curbing abutting such lot. The Charter Act, the va-

lidity of which was attacked by Section 4, authorized the City Council by ordinance to provide for and compel the construction of sidewalks and pavements, and if the owner of any lot should fail to comply with the provisions of such ordinance, then the City Council might contract for the construction of such sidewalks or pavement, the amount contracted to be paid therefor to become a lien upon the lot along which such sidewalk or pavement should be constructed, which amount might be assessed as a special tax againt such lot, and "may be enforced by suit, at law or in equity, or the said amount may be recovered against such owner or owners by a suit before any court of competent jurisdiction." In disposing of the objection raised in the case, that said Section 4 of the Charter Act was invalid, because it failed to provide for giving any notice to the property owner and thereby enable him to have a hearing as to the assessment prior to the lien being fixed upon his property, the Court said: "It will be observed that such Section 4 expressly provides for the enforcement of the special tax therein provided for by an action at law or a suit in equity, in which the owner would necessarily have an opportunity of being heard and of making any defense which he might have." Aside from the fact that before any tax could be imposed to pay for the construction of such sidewalk, the lot owner was first required to construct such sidewalk himself, and in the event of his failure to do so, he was placed on notice that as an incident thereto the tax would be imposed to pay for such construction, it was entirely practicable and within the reasonable power of the property owner, in any suit brought to enforce such lien, to contest the merits of the entire matter from the validity of the ordinance to the completion of the work of constructing the sidewalk, including the nature of the

work done, its value and the fairness or propriety of the charge made therefor. The conditions and facts, as shown to be existing in the present case, are manifestly far different from those exhibited in the Anderson case. Here, under Section 21 of the Act, it is provided that "no informality or irregularity in holding any of the meetings provided herein, or valuation or assessment of the lands, or in the name of the owners or of the number of acres therein shall be a valid defence" in any suit brought to enforce the lien for taxes imposed under the Act. It would practically be an impossibility for any owner of land upon which the taxe is imposed to show as a defence in any suit for the enforcement of such lien, that the amount assessed by the Supervisors was excessive for defraying the preliimnary expenses to be incurred under Section 7 of the Act, as such a defence would require that the tax was excessive with reference to the entire district and not merely with respect to the particular tract of land owned by any one person. Such person is prevented by the express povisions of the Act from presenting as a defence to such suit all irregularities in the assessment made by the Supervisors, even though thereby they might result in depriving property owners of substantial rights, designed for their protection as citizens and to prevent a sacrifice of their property. Under the provisions of the Act, the opportunity accorded to owners of land affected by the tax imposed, to be heard with respect to the assessment of the tax and its levy, is ineffectual to afford them the full and fair opportunity to contest the claim that the constitutional provision against depriving any person of his property without due process of law guarantees to every citizen of the State. As was said in Hagar v. Reclamation Dist. No. 108, 111 U. S. 701, 4 Sup. Ct. Rep. 663, 28 L. Ed 589: "What constitutes that

process it may be difficult to define with precision so as to cover all cases. It is, no doubt, wiser, as stated by Mr. Justice MILLER in Davidson v. New Orleans, 96 U. S. 97, text 104, to arrive at its meaning 'By the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decision may be founded.' It is sufficient to observe here, that by 'due process' is meant one, which, following the forms of law, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the means to be attained; and wherever it is necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question means, therefore, that there can be no proceeding against life, liberty or property, which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights."

This fundamental principle assures that no one shall be divested of his property as a result of suit, either judicial or in its nature judicial, without a fair and full opportunity to contest the claim set up against him, to meet it on the law and facts and show, if he can, that the pretext for making it is unfounded; and the hearing allowed must be such as is practicable and reasonable in the particular case, not merely colorable and illusory. 6 R. C. L. 451. Whatever right to a hearing accorded by the Act in question to owners of land upon which the tax under consideration is imposed amounts merely to the shadow and not the substance to the shell and not the fruit of the constitutional guaranty that no person shall

be deprived of life, liberty or property without due process of law.

We are, therefore, of the opinion, for the reasons stated, that Section 7 of the said Act is unconstitutional and that the uniform tax of twenty-five cents per acre imposed thereunder is void, and the judgment of the Circuit Court is reversed and the case remanded for proceedings not inconsistent with this opinion.

BROWNE, C. J., TAYLOR AND ELLIS, J. J., concur.

WHITFIELD, J., dissents.

WEST, J., disqualified.

WHITFIELD, J., *dissenting.*—In this case the District is established by Statute as a governmental agency to perform a service within the police power of the State. The tax is levied by the governmental agency within the maimum fixed by the Statute. The amount of the tax has no reference to the value of the land, but is assessed as a flat rate per acre and for a purpose as expressly provided for in the Statute, the surplus, if any, to be used for the main purposes of the Act. If the assessment is excessive it may be tested in a suit to enforce a lien therefor.

It is conceded that due process of law is secured to the taxpayer if an opportunity is given to contest the merits of the assessment in a suit brought to enforce the tax or to effectuate a lien therefor. Embree v. Kansas City & Liberty Boulevard Road Dist., 240 U. S. 242, 36 Sup. Ct. Rep. 317; Houck v. Little River Drainage Dist. 239 U. C. 254, 36 Sup. Ct. Rep. 58. In this case the Statute, Chapter 7430, Acts of 1917, provides for

enforcing the lien of the assessment by suit in chancery.
The provision for the assessment to be enforced in chancery may be embraced in the subject expressed in the
title of the Act; but if the provision of the Statute that
"no informality or irregularity" in stated proceedings in
making the assessment "shall be a valid defense," can
be regarded as denying a full hearing on the merits in
the suit to enforce the lien for the tax, such provision
may be ignored, it not being "matter properly connected"
with the subject of the Act expressed in the title, as required by Section 16, Article III of the Constitution,
since it conflicts with the organic provision forbidding
special laws "regulating the practice of Courts of Justice." Sec. 20, Art. III Const.

Section 49 of the Act here considered provides that
"any clause of this Act which may for any reason be
declared unconstitutional or invalid may be eliminated
from this Act, and the remaining portion or portions of
said Act shall remain in force and be valid as if such
invalid portion thereof had not been incorporated therein."

Under this section as well as under well established
principles of statutory interpretation, the invalid provisions curtailing the right to interpose defenses on the
merits in suits to enforce the tax liens, may be eliminated as violative of Sections 16 and 20, Art. III Constitution, and the remaining portion of the Act here involved may "remain in force and be valid as if such invalid portion thereof had been incorporated therein."
Thus interpreted the provision for suit to enforce the
lien affords due process of law.