STATE v. JOHN T. CHRISTIANSEN, A. N. SAKHNOVSKY, and T. N. TOMS, as and constituting the Board of Supervisors of Dade Drainage District; and DADE DRAINAGE DISTRICT.

195 So. 153
Division B
Opinion Filed April 2, 1940

*G. A. Worley,* for Appellant;

*Evans, Mershon & Sawyer, Herbert S. Sawyer, W. G. Troxler* and *Atwood Dunwoody* for Appellees.

PER CURIAM.—This appeal is from a final decree of the Circuit Court of Dade County, validating, approving and confirming refunding bonds of Dade Drainage District, and the taxes and assessments levied and to be levied in payment thereof.

Chapter 8871, Acts of 1921, created the Napoleon B. Broward Drainage District, consisting of territory in Broward and Dade Counties, for the purpose of "draining and reclaiming the lands * * * and protecting the same from the effects of water for agricultural and sanitary purposes, and for the public convenience and welfare and for the public utility and benefit." The Act levied an annual, graduated acreage tax on the land located in the district for the purpose of constructing and maintaining such "canals, drains, levees, dikes, dams, reservoirs, sluices, revetments, and other works" as the Board of Supervisors of the district shall deem necessary.

Napoleon B. Broward Drainage District issued, on January 1, 1922, and January 1, 1923, a total of $350,000.00 of bonds to carry out the purposes of the district, payable out of the annual acreage tax levied on the land in the district by Chapter 8871, Acts of 1921. The bonds drew interest at the rate of 6% and matured in annual installments from 1930-1949 inclusive. There is now outstanding $233,000.00 principal of said bonds and matured interest coupons amounting to $33,150.00. The Reconstruction Finance Corporation has purchased all of these bonds except $4,000.00.

Chapter 9417, Acts of 1923, created the Dade Drainage District, for the same express purposes as stated in Chapter 8871, Acts of 1921, in the creation of the Napoleon B. Broward Drainage District. Section 43 excluded part of the lands from Broward Drainage District, and Section 1 included them in Dade Drainage District. The lands included in Dade Drainage District are located in both Dade and Broward Counties. Section 13 levied a graduated acreage tax on the lands in the District. Section 46 provided that after organization of the Board of Supervisors of Dade Drainage District, they should meet with the Board of Supervisors of Broward Drainage District to agree upon a plan for an equitable division of the assets of Broward Drainage District, and payment of the liabilities to be assumed by Dade Drainage District, all of which matters shall be set forth in a Resolution adopted by the Board of Supervisors of Dade Drainage District, which Resolution shall have the effect of a contract.

Pursuant to Section 46 of Chapter 9417, Acts of 1923, the Board of Supervisors of each of the Drainage Districts met and agreed that the Dade Drainage District should have 54.45% of the assets and be responsible for that same proportion of the indebtedness, at that time, of the Broward Drainage District.

No resolution of the Board of Supervisors of Dade Drainage District to that effect is found in the record; but Section 15 of Chapter 17886, Acts of 1937, contains the following:

"That the Board of Supervisors of Dade Drainage District, on July 13, 1923, and July 10, 1924, met with the Board of Supervisors of Napoleon B. Broward Drainage District, and the said Boards of Supervisors in accordance with Sections 45 and 46 of Chapter 9417, Laws of Florida, Acts of 1923, did agree that the said Dade Drain-

age District was entitled to receive 54.45% of the Assets of the said Napoleon B. Broward Drainage District and should assume payment of 54.45% of the bonded indebtedness, principal and interest, of said Napoleon B. Broward Drainage District then outstanding, and the said acts and the said resolutions of said Boards of Supervisors are hereby ratified, approved, validated and confirmed and it is hereby determined and declared that the said Dade Drainage District is indebted to the extent of 54.45% of the unpaid portion of said bonded indebtedness, principal and interest."

This Act, Chapter 17886, Acts of 1937, also provided for an annual acreage tax to be levied on the land in the District, the tax on land in Zone A not to exceed 45 cents per acre per year; the tax on land in Zone B not to exceed 20 cents per acre per year; and the tax on land in Zone C not to exceed 10 cents per acre per year. This tax was to be used for debt service. A similar tax was authorized for maintenance. It was determined in the Act that all property in each Zone was benefited and will be benefited equally by the public improvements constructed and to be constructed in said district. The Act provided also that the Dade Drainage District could issue, pursuant to a resolution of the Board of Supervisors, without an election, bonds to refund any or all of the indebtedness of said district.

On August 24, 1939, the Board of Supervisors of Dade Drainage District, at a meeting of said board duly called and held adopted a resolution authorizing issuance of $93,000.00 Refunding Bonds to retire 54.45% of the bonds of Napoleon B. Broward Drainage District issued January 1, 1922, and January 1, 1923, for which Dade Drainage District was liable. The resolution provided that the bonds would be dated July 1, 1939, and draw 4% interest, a few of the bonds maturing each year beginning with July 1,

1941, until the last was retired July 1, 1970. The proposed maturity dates of the Refunding Bonds are set out in Section 3 of the resolution. The form of the bonds and interest coupons is set out in Section 4 of the resolution. Pertinent provisions of the Refunding Bonds are:

"This bond is one of an authorized issue of Ninety Three Thousand Dollars ($93,000.00) of like date and tenor except as to number, denomination and date of maturity, issued for the purpose of reducing and refunding at a lower rate of interest Fifty-four & 45/100 per centum (54.45%) of certain bonded indebtedness of Napoleon B. Broward Drainage District, a drainage district oragnized and existing under the laws of Florida, of the issue dated January 1, 1922, and January 1, 1923, said Fifty-four & 45/100 per centum (54.45%) of said indebtedness being the portion assumed by Dade Drainage District in accordance with Section 45 and Section 46 of Chapter 9417, Laws of Florida, Special Acts of 1923, and this bond is issued pursuant to the Constitution and laws of the State of Florida, including without limiting the generality of the foregoing, Chapter 13627, Laws of Florida, Acts of 1929, Chapter 15772, Laws of Florida, Acts of 1931, and Chapter 17886, Laws of Florida, Acts of 1927, and pursuant to resolutions and proceedings of the Board of Supervisors of Dade Drainage District duly passed and adopted. In addition to all other rights, the holder or holders of this bond and the issue of which it is a part is and are subrogated to all rights of the holders of the original bonded indebtedness refunded hereby.

"It is hereby certified, recited and declared that all acts, conditions, proceedings and things required by the Constitution and laws of the State of Florida to exist, happen and be performed precedent to and in the issuance of this bond, have happened and have been performed in regular

and due time, form and manner as required by law; that Dade Drainage District has been duly created, organized, established and confirmed as a drainage district by the passage, enactment and approval of Chapter 9417, Laws of Florida, Special Acts of 1923, Chapter 11988, Laws of Florida, Acts of 1927, Chapter 16004, Laws of Florida, Acts of 1933, and Chapter 17886, Laws of Florida, Acts of 1937; that by the passage of Chapter 17886, Laws of Florida, Acts of 1937, the Legislature of the State of Florida ascertained, determined and declared, that the benefits accrued and to accrue to the lands within Dade Drainage District by virtue of the works of public improvements which had been constructed by or under the authority of the Board of Supervisors of Dade Drainage District and by or under the authority of the Board of Supervisors of Napoleon B. Broward Drainage District are at least equal in amount to the taxes and assessments which had been levied and imposed by or for Dade Drainage District on such lands prior to the enactment of said Act and the special taxes or assessments authorized by said Act to be levied and that all the lands located within Zone A, described in said Chapter 17886, Laws of Florida, Acts of 1937, now are and will be benefited equally; that all the lands located within Zone B, described in said Chapter 17886, Laws of Florida, Acts of 1937, now are and will be benefited equally; that all the lands located within Zone C, described in said Chapter 17886, Laws of Florida, Acts of 1937, now are and will be benefited equally; and that the ratio of benefits conferred upon the lands in Zone A, those in Zone B and those in Zone C, respectively, is proportionate to the taxes and assessments authorized by said Chapter 17886, Laws of Florida, Acts of 1937, to be levied upon such lands, respectively. It is further certified, recited and declared that neither the validity of said district nor of Napoleon

B. Broward Drainage District nor the bonds nor the indebtedness of Napoleon B. Broward Drainage District assumed by Dade Drainage District nor the right to collect drainage taxes by or for Dade Drainage District or Napoleon B. Broward Drainage District has been contested in any court while any steps were being taken for the issuance of this bond; that the amount of this bond issue together with all other indebtedness of said Dade Drainage District does not exceed any constitutional or statutory limitation of indebtedness; and that due provisions have been made and will be made in accordance with the provisions of Chapter 9417, Laws of Florida, Special Acts of 1923, as amended by Chapter 11988, Laws of Florida, Acts of 1927, Chapter 16004, Laws of Florida, Acts of 1933, and Chapter 17886, Laws of Florida, Acts of 1937, for the levy and collection of Debt Service Taxes against all of the lands within said district sufficient in amount to pay the principal of and interest on this issue of bonds when due. For the prompt payment of this bond and the interest thereon when due the full faith, credit and resources of Dade Drainage District are hereby irrevocably pledged.

"It is further certified, recited and declared that this bond and the issue of which it is a part are issued as an extension of the original bonded indebtedness refunded hereby and as evidence of a renewal of said indebtedness and not as a novation and that the holder or holders of this bond and the issue of which it is a part shall have all of the rights and remedies held by the holder or holders of the original bonded indebtedness refunded hereby."

Section 7 of the resolution provided that the Debt Service Tax be applied in payment of principal and interest of the Refunding Bonds. This section of the resolution also contained a schedule of the amount agreed to be raised

each year from 1939 to 1969 to pay principal and interest and to maintain a reserve fund of $5,000.00.

On September 19, 1939, the Board of Supervisors filed their petition to have validated the issue of $39,000.00 Refunding bonds together with interest coupons, and the taxes levied and to be levied for the purpose of paying principal and interest of said bonds.

On the same date, the court entered an order ordering, directing, requiring and notifying the State of Florida, through its State Attorney, G. A. Worley, and the property owners, citizens, taxpayers and others, including non-residents of Dade Drainage District having or claiming any right, title or interest in the District or the taxable property therein to appear on a day certain and show cause why said authority, proceedings, bonds, assessments, taxes and the power to levy the same should not be validated and confirmed.

Notice of the court's order was published in the Miami Daily News and also in the Fort Lauderdale Daily News on September 20 and 27 and October 4 and 11, 1939.

On October 21, 1939, G. A. Worley, State Attorney, filed an answer to the petition, on behalf of the State of Florida. No appearance was made by any citizen, owner or taxpayer of the District, or non-resident owner, citizen or taxpayer claiming an interest in the property located in the district.

Final decree was entered validating, approving and confirming the organization and establishment of Dade Drainage District; validating, approving and confirming the assumption by Dade Drainage District, of 54.45% of the bonds of Napoleon B. Broward Drainage District, dated January 1, 1922, and January 1, 1923; holding constitutional Section 15 of Chapter 17886, Acts of 1937, validating and confirming the acts and resolutions of Dade Drainage District relating to assumption of said indebtedness;

holding constitutional Sec. 13 of Chapter 9417, Acts of 1923, as amended by Chapter 11988, Acts of 1927, as amended by Chapter 16004, Acts of 1933, as amended by Chapter 17886, Acts of 1937, relating to the levy and imposition of taxes on lands within said Dade Drainage District to pay principal and interest of the refunding bonds; holding constitutional Section 15 (which should be Section 17) of Chapter 17886, Acts of 1937, authorizing the Board of Supervisors of Dade Drainage District to cancel any and all unpaid acreage taxes for the year 1932 and prior years on lands within said district, and all interest and penalties accrued as of the date of the cancellation, and all liens or certificates representing such taxes, interest and penalties, or any percentage of such taxes, interest and penalties; and approving, validating and confirming the proceedings of the Board of Supervisors of Dade Drainage District leading up to and culminating in issuance of the Refunding Bonds, each of the Refunding Bonds, and each of the coupons appurtenant thereto, and the taxes or assessments levied or to be levied to pay the principal and interest of said Refunding Bonds.

From this final decree, the State of Florida took this appeal.

The first contention made is that the assumption by Dade Drainage District of 54.45% of the principal and interest of the bonds issued by Napoleon B. Broward Drainage District on January 1, 1922, and January 1, 1923, is invalid and unconstitutional.

Chapter 9417, Acts of 1923, creating Dade Drainage District, provided that said district should be liable for its equitable pro rata portion of all indebtedness owing, at that time, by Napoleon B. Broward Drainage District, and that the Boards of Supervisors of the two districts should meet and determine what part of the debt Dade Drainage

District should assume. The determination of the two Boards of Supervisors was that 54.45% of the then existing indebtedness should be borne by Dade Drainage District, which determination was ratified and confirmed by Chapter 17886, Acts of 1937. The latter Act also determined that the benefits accrued and to accrue to all lands within the Dade Drainage District "are at least equal in amount to the taxes and assessments which have been levied and imposed by or for Dade Drainage District on such lands prior to the enactment of this statute and the special taxes or assessments authorized by this Act to be levied." This Act further found that all property located in each Zone now is and will be benefited equally.

Although it is possible under certain circumstances to show that a legislative Act transferring and imposing liability for a proportionate part of the debts of a political subdivision of the State on another newly created political subdivision of the State, contiguous to and created partly from the territory of the former political subdivision is void, because the property located in the newly created political subdivision cannot be even remotely benefited by the improvements made in that territory, which are evidenced by the indebtedness, see State v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327, yet there is no showing in this case, on the record before us, that the legislative approval of the assumption by Dade Drainage District of 54.45% of the then existing indebtedness of Napoleon B. Broward Drainage District had no relation to amount of benefit in fact received by and to be received by the land located in Dade Drainage District. The answer raised this question, but there is no evidence in the record to rebut the *prima facie* showing of the statute, Chapter 17886, Acts of 1937, that such land was benefited and will be benefited according to the legislative determination expressed there.

Under authority of State v. County of St. Lucie, 134 Fla. 364, 183 So. 846, Dade Drainage District could issue refunding bonds to take the place of its proportionate part of the bonds issued by Napoleon B. Broward Drainage District, on January 1, 1922, and January 1, 1923, which liability the Dade Drainage District had lawfully assumed upon division of the territory pursuant to the provisions of the legislative Act, Chapter 9417, Acts of 1923, and pursuant to proceedings taken thereafter, which were approved and validated by Chapter 17886, Acts of 1937.

The second contention made is that Section 8 of Chapter 17886, Acts of 1937, authorizing the Board of Supervisors of Dade Drainage District to fix, within prescribed limits, the amount of debt service and maintenance taxes to be levied annually on lands in said district, is void as being an attempt to improperly delegate to the district the determination of the amount of taxes necessary to be levied.

The resolution of the Board of Supervisors of Dade Drainage District of August 24, 1939, provided that $93,000.00 of Refunding Bonds of Dade Drainage District, both principal and interest, were to be payable from the debt service tax to be levied under provisions of Section 8 of Chapter 17886, Acts of 1937, which section provided that a flat tax of not exceeding 45 cents per acre per year be levied on all lands in Zone A, 20 cents per acre per year on all lands in Zone B, and 10 cents per acre per year on all lands in Zone C. Section 9 of the Act determined that the benefits accrued and to accrue to the lands located in Dade Drainage District by virtue of the public works and improvements therein are at least equal to the amount of taxes and assessments that have been levied and imposed prior to the enactment of this statute, and the taxes and assessments authorized to be levied by this statute. This section further found that all lands located within each zone now are and

will be benefited equally. Section 10 of the Act provided that the Board of Supervisors of Dade Drainage District, prior to May 1st of each year, beginning with the year 1938, shall prepare a budget showing "debt service" and "maintenance" requirements for the district during the year beginning next November 1 and ending the next succeeding October 31. The details of the required budget necessary to be prepared are set forth in the Act. The Act, Chapter 17886, Acts of 1937, provides in Section 10 as follows, with regard to notice of the assessment, and making changes in the budget:

"(b) Upon the presentation of such budget to the Board the same shall be placed on file in the office of the Secretary of the District, and the Board shall cause to be published in a newspaper published in each county lying partly within the District, once in each week for two (2) consecutive weeks, a notice of the completion of such budget, and that the same may be examined at the office of the Secretary and that the Board will meet at a time and place to be designated in said notice, being not less than fifteen days from the date of the first publication thereof, for the purpose of hearing objections and complaints with respect to said budget. At the time and place specified in said notice the Board shall meet for the purpose of hearing objections and complaints concerning the said budget and for that purpose may adjourn from day to day, and the said budget may be altered, changed, or amended in any respect by the said Board during or at said hearing.

"(c) After the hearing aforesaid, and when the Board shall have made any alterations, changes, or amendments in said budget which shall have been deemed necessary at said hearing, the Board shall adopt the same and it shall be spread upon the Minutes of the Board; and the Board

shall also adopt and spread upon its Minutes a resolution levying and imposing the amount of the Debt Service Tax to be levied and imposed upon the lands within Zone A, Zone B and Zone C, respectively, for such year, and the amount of the Maintenance Tax to be levied and imposed upon the lands within Zone A, Zone B, and Zone C, respectively, for such year."

The Act, Chapter 17886, Acts of 1937, fixes a maximum flat rate per acre per year to be levied on land in Dade Drainage District for Debt Service; and the Act determines that the land has been benefited and will benefit in at least the amount of taxes imposed prior to this Act and under this Act. A discretion is allowed to the Board of Supervisors, under the Act, to set the amount of tax levy for Debt Service for each year, within certain limits, and an opportunity is allowed, after notice given, to those interested to object before the levy is made and adopted. The Board of Supervisors may determine in a particular year that it is necessary to levy the maximum limit allowed by the Act, or it may determine that a stated percentage of the maximum only is necessary. In either event the right to object, after notice given, still exists. This satisfies all our definitions of due process of law, and is a proper delegation of authority to the Board of Supervisors to levy assessments for special benefits, and this section of the Act, Section 8 of Chapter 17886, Acts of 1937, is valid and constitutional. This holding is not inconsistent with the holding in Redman v. Kyle, 76 Fla. 79, 80 So. 300. It is not proper in a proceeding to validate Refunding Bonds to bring in question the exercise of the authority of the Board of Supervisors conferred upon them by the Act.

The last contention made is that Section 17 of Chapter 17886, Acts of 1937, permitting the Board of Supervisors of Dade Drainage District to cancel drainage taxes for the

year 1932 and prior years, without equalizing the advantage conferred on land owners who failed to pay such taxes with those owners who paid such taxes, is void and unconstitutional.

The final decree below held that Section 17, of Chapter 17886, Acts of 1937, valid. This section provided:

"Section 17 (a)   The Board of Supervisors is hereby authorized and empowered to cancel all unpaid acreage taxes or assessments heretofore levied and assessed by or for Dade Drainage District upon lands which are not included within the boundaries of the District as described in Section 1 of this Act, and all interest and penalties thereon or in connection therewith accrued as of the date of such cancellation, and liens or certificates representing such taxes, interest and penalties.

"(b)   The Board of Supervisors is hereby authorized and empowered to cancel any and all unpaid acreage taxes or assessments levied and assessed by or for said Dade Drainage District for the year 1932 and prior years upon lands within the boundaries of the District, as described in Section 1 of this Act, and all interest and penalties thereon or in connection therewith accrued as of the date of such cancellation, and liens or certificates representing such taxes, interest and penalties, or any percentage or proportion of such taxes, interest and penalties, for any one or all such years, and the Board may cancel such taxes, interest and penalties, conditionally or unconditionally as it shall determine."

The Circuit Court considered the constitutionality of this section of the Act so the Board of Supervisors might know by which method (whether by cancellation of taxes under the Act, or enforcement of tax liens) they might place back on a taxpaying basis, property on which taxes had not been paid since 1932. This has a relative bearing on that part

of the final decree validating the taxes and assessments to be levied for payment of the Refunding Bonds and interest. It had a bearing on the amount to be levied each year by the Board of Supervisors for Debt Service. The "taxing source" is made one of the issues in validation proceedings by Sec. 5124 C. G. L., Perm. Supp. 1936, which provides that the judge shall issue an order requiring all persons claiming any interest in lands in said district to appear and contest "why said authority and/or proceedings, bonds, assessments and/or taxes and/or the power to levy the same, should not be adjudicated, validated and confirmed."

Subdivision (a) of this section of the Act authorizes the Board to cancel all taxes for 1932 and prior years on all land not within the district. Subdivision (b) of the same section authorizes the board to cancel all such taxes on lands within said district. This latter part of the section, applicable here, as well as the former, vests in the Board of Supervisors a discretion as to whether it will cancel all unpaid taxes for 1932 and prior years, or only a percentage of them for all years on which they are unpaid, or a part or all of the unpaid taxes for 1932 and any year prior thereto. The cancellation under the statute may be either conditional or unconditional. Apparently the Act leaves it in the discretion of the Board of Supervisors as to whether it will cancel taxes on particular lands or not. This is an unlawful delegation of power to an administrative board, leaving it in the discretion of the board to favor delinquent over punctual taxpayers, and allowing the board to discriminate between the delinquent taxpayers. In the case of Richey v. Wells, 123 Fla. 284, 166 So. 817, we held:

"Whatever power state has to remit taxes already duly assessed and levied cannot be delegated by statute to board

to be indulged in at board's mere 'discretion' whether 'sound' or otherwise."

In the body of that opinion we said:

"What is such 'sound discretion' considered from the standpoint of that definiteness and certainty which must characterize all statutes, in order that the powers of government shall be administered as 'one of laws and not a government of men?' I have searched the statute in vain for a prescription of any such standard. Therefore, the statute is in terms nothing more than an unconstitutionally delegated power of legislation vested in certain named officers, whose sole limitation on the exercise of the powers vested is that of their own free will and choice, otherwise characterized in the Act as 'sound discretion,' in so far as 'omitted subsequent taxes' are concerned. It is not enough to say that no actual abuse of such unbridled power is threatened or has occurred. It is sufficient to point out that no such power can be vested in the first instance, because whatever power the State has to remit taxes already duly assessed and levied is a purely legislative power, the exercise of which cannot be delegated to a statutory board to be indulged in at its mere 'discretion' whether 'sound' or otherwise. See Illinois Cent. R. Co. v. Commonwealth, 128 Ky. 268, 108 S. W. 245."

Section 17 of the Statute, Chapter 17886, Acts of 1937, does not cancel taxes for 1932 and prior years that remain unpaid, but leaves the matter to the discretion of the Board of Supervisors, which invalidates this portion of the Act. Therefore that paragraph of the final decree holding this Section of the Act constitutional should be stricken. The elimination of this paragraph from the final decree does not alter the effect of the final decree in validating the refunding bonds and the taxes and assessments levied and to

be levied to pay the principal and interest on these bonds. But it relates only to the method by which the Board of Supervisors may put this land, on which taxes are delinquent, back on a taxpaying basis. The Board of Supervisors still has the right to enforce the lien for taxes for the year 1932 and prior years, so that the lands may be redeemed by the owners or sold to others who will pay the taxes.

With the exception of the single paragraph mentioned above, the final decree is affirmed.

It is so ordered.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.