SILAS J. MOTES, Intervening Respondent, v. Putnam County.

196 So. 465

En Banc

Opinion Filed May 21, 1940

*J. V. Walton,* for Appellant;

*James H. Millican, Jr., P. B. Revels,* and *Giles J. Patterson,* for Appellee.

BUFORD, J.—On appeal we review decree validating refunding bonds to be issued to refund $381,000.00 of bonds alleged to be outstanding of an issue of $500,000.00 of bridge bonds of Putnam County issued July 1, 1924. The original issue of bonds was in the denomination of $1,000.00 each and it is contemplated that the refunding bonds will be in like denominations to be dated December 1, 1939, and maturing as follows:

|  | Maturity |  |  |
|---|---|---|---|
| "Serial Number | Date July 1 | Amount Maturing | |
| 1- 19 Incl. | 1940 | $19.000 | |
| 20- 39 " | 1941 | 20,000 | |
| 40- 60 " | 1942 | 21,000 | |
| 61- 83 " | 1943 | 23,000 | |
| 84-107 " | 1944 | 24,000 | |
| 108-133 " | 1945 | 26,000 | |
| 134-160 " | 1946 | 27,000 | |
| 161-188 " | 1947 | 28,000 | |
| 189-217 " | 1948 | 29,000 | |
| 218-247 " | 1949 | 30,000 | |
| 248-279 " | 1950 | 32,000 | |
| 280-312 " | 1951 | 33,000 | |
| 313-346 " | 1952 | 34,000 | |
| 347-381 " | 1953 | 35,000 | $381,000." |

Interest payable from January 1, 1940 at 4 per cent per annum, payable semi-annually on the 1st day of January and July of each year.

The bonds were designated to be known as "Putnam County Memorial Bridge Refunding Bonds, Issue of 1939."

The original bonds bear interest at the rate of 5½ per cent per annum, payable semi-annually on January 1 and July 1 of each year.

The original bonds are callable at par at any interest payment period on and after January 1, 1940.

The preliminary contract between proposed fiscal agents and the Board of Bond trustees was in the form of a proposition submitted by the proposed fiscal agents and accepted by the Board of Bond Trustees, as follows:

"1. We are to be appointed your fiscal agent, and as such we will have prepared for you all resolutions necessary to the calling of these bonds and validation proceedings which must be taken in connection with the authorization and issuance of the new refunding bonds.

"2. We will furnish you without cost the approving opinion of a nationally known bond attorney, on whose opinion these bonds can be advertised and sold.

"3. We will furnish you, without cost, blank bonds ready for execution and signature.

"4. We agree to pay the fee of your own attorney and to submit to him for his approval prior to adoption by you, all resolutions, validation proceedings, notices, etc.

"5. We further agree that when these bonds are offered for sale, in accordance with our directions, we will furnish you with a bid of not less than 102.50 for bonds bearing an average interest rate of not to exceed 4%. The new refunding bonds, herein referred to, will mature as may be mutually agreed upon, but it is understood that any schedule of maturities submitted to you will generally approximate the present maturities of the callable bonds, and that in no event will the longest maturity extend beyond the year 1953, which is the final maturity date of the present issue. In this connection, we will present to you and your attorney,

for your approval, several feasible schedules of maturities showing the possible saving under each schedule.

"6. Our charge for this service will be 2½% of the par value of bonds refunded, which fee you agree to pay to us simultaneously with delivery of bonds to the successful purchaser.

"May we direct your attention to the fact that time is the essence of this proposal since there remains between now and January 1st barely enough time to carry through the validation proceedings, and further since the notice of Call must be published not later than December 1, 1939. Therefore, we urge your immediate consideration of this proposal, which proposal is for immediate acceptance.

"Respectfully submitted,

"Leedy, Wheeler & Company,
"By L. C. Leedy, Pres.
"Clyde C. Pierce Corporation
"By C. C. Pierce, Pres.

Accepted by proper resolution of the Board of Bond Trustees this 7th day of November A. D. 1939.

"C. E. Currie, Chairman."

The record shows that subsequent to November 7, 1939, notice was given that a meeting of the Board of Bond Trustees would be held on November 21 at the home of the chairman of the board, about five miles from the county site, on account of the illness of the chairman; that the meeting was not held that day, but a meeting of two members of the board, with notice of such meeting to the third member, was held at the home of the chairman of the board, as stated, *supra,* on the 22nd day of November and at that meeting the two members of the board present adopted resolution providing for the issuance of the

$381,000.00 Putnam County Memorial Bridge Bonds, provided therein for the form of the bonds and for the manner of payment of the bonds.

At the same time and place the two members of the board present adopted a resolution to call the outstanding Putnam County Bridge Bonds dated July 1, 1924, totaling $381,000, for payment on January 1, 1940, and provided for publication of notice of such call for redemption.

The record shows that the County Commissioners of Putnam County adopted like resolutions as those adopted by the board of bond trustees which was apparently done in the abundance of caution so that the bonds when issued would be the general obligation of Putnam County and there could be no question of the fact that the refunding bonds were issued by officials having authority to issue the same.

From the decree validating the bonds appeal was taken and the appellant presents here six (6) questions for our consideration, which are stated as follows:

"FIRST QUESTION: May the Board of Bond Trustees of Putnam County hold an unscheduled official meeting without formal call in a sickroom in the private residence of the chairman of the board, five miles distant from the county seat, and against the objection of one of the three members of the board who refused to attend at such time and place, and then and there effectively adopt the refunding resolution in question, and/or the resolution to call and mature the outstanding bonds?"

"SECOND QUESTION: Is the Board of County Commissioners of Putnam County the governing body of such county authorized under Section 2 of the General Refunding Act of 1931 (Chapter 15772) to adopt a resolution refunding the bonds in question?"

"THIRD QUESTION: Does the General Refunding Act of

1931, or any law, authorize the County Commissioners of Putnam County and the Board of Bond Trustees of Putnam County to join in issuing and jointly issue and execute, the instant refunding bonds?"

"FOURTH QUESTION: May Putnam County legally issue refunding bonds to be sold and/or exchanged to the full face amount of its uncancelled bridge bonds when such county at the time owns and holds a large amount of money and thirty-six of such uncancelled bonds in a sinking fund available and earmarked to the payment of the principal of such uncancelled bonds?"

"FIFTH QUESTION: Is the Board of Bond Trustees of Putnam County legally authorized to enter into a fiscal agency contract with outside bond-broker corporations under the terms of which such private corporations are constituted the fiscal agents of the county and/or the board to furnish all resolutions necessary in the calling of the unmatured existing bonds, and in the issuing of refunding bonds; to furnish all resolutions necessary in the calling of the unmatured existing bonds, and in the issuing of refunding bonds; to furnish all validation proceedings and secure approving opinion of a nationally known bond attorney and to arrange and pay the fees of the County and/or Bond Trustees' attorneys, and under which such private corporations agree to furnish a bid of not less than 102.50 for the bonds bearing an average interest rate of four per cent when sold; and under which contract the Bond Trustees agree to pay such fiscal agents $2\frac{1}{2}\%$ of the par value of the bonds refunded simultaneously with delivery of bonds to the successful purchaser?"

"SIXTH QUESTION: Does not the pledge on the part of the Board of County Commissioners of the full faith and credit and taxing power of the County, and the execution

by the Board of the new bond carrying such pledge, amount to a novation of contract and create a new and different debt in view of the fact that the original bonds carried no pledge by the County Commissioners of the full faith and credit and taxing power of the county but only the pledge by the Bond Trustees of the faith, credit and taxing power of the County such Bond Trustees were authorized by law to make, that is, a pledge of the taxing power of the County as a secondary source and supplement to tolls?"

The first question, presented is novel in this State insofar as a board of this sort is concerned. It is true that in some States official actions taken by a county administrative board at a place other than the county site have been held valid but we have conditions in Florida which appear not to have obtained in those jurisdictions. By Chapter 9585, Special Acts of 1923, Special Road and Bridge District No. 7, created the entire territory within the boundaries of Putnam County into a special road and bridge district.

By Chapter 13333, Special Acts of 1927, Special Road and Bridge District No. 7 of Putnam County was consolidated with Putnam County and thereby Putnam County became a unit as a road and bridge district. The Board of Bond Trustees for Putnam County was created by the latter Act. The board of bond trustees was vested with all the power theretofore vested in the Board of Bond Trustees of the Special Road and Bridge District No. 7 of Putnam County and by two Acts the board of bond trustees was practically substituted in all respects in regard to the construction and maintenance of roads for the board of county commissioners.

In the case of State *ex rel*. Buford v. Fearnside, *et al.*, 87 Fla. 349, 100 Sou. 256, this Court upheld the provisions

of Chapter 9582, Special Acts of 1923, the purpose of which Act is indicated in the title, which is as follows:

"AN ACT To Create Certain Territory in Putnam County, Florida, into a Special Road and Bridge District: To Legalize and Validate an Election and the Result as Shown by the Canvass of the Returns Thereof, Held in Said Territory Constituting the Said Territory into a Special Road and Bridge District: and To Authorize, Legalize and Validate the Building and Construction of Certain Roads and Bridges Named Therein, and for the Issuance of Bonds To Pay Therefor, and the Appointment of a Board of Bond Trustees, and To Invest Said Trustees with Certain Powers and Duties, and To Carry into Effect the Object and Purposes of said Election; and to Provide for the Collection, Use and Control of Funds within Said Territory for Interest and Sinking Fund for Said Bonds."

And in that opinion it was held:

"As the Act is not one 'regulating the jurisdiction and duties of any class of officers' or 'for assessment and collection of taxes for State and county purposes,' or 'for opening and conducting elections for State officers' but is an Act to create a Special Road and Bridge District in Putnam County, Florida, for the construction of roads and bridges in such district, the provisions of the Act as to the jurisdiction and duties of *district* officers, and as to the assessment and collection of taxes for such *district* purposes and as to the election of district officers do not violate Section 20, Article III of the Constitution. And the provisions as to the duties of the county commissioners of the county, as well as to the other matters last above referred to, are merely incidental to the main purpose of the Act and do not violate Section 20, Article III of the Constitution. See State *ex rel.* Attorney General v. Daniel, filed March 19, 1924, also

Kroegel v. Whyte, 62 Fla. 527, 56 South. Rep. 498; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47; Brannerman v. Catts, 80 Fla. 170, 85 South. Rep. 336.

"There is nothing in our Constitution that prohibits the Legislature from enacting a statute taking away from the boards of county commissioners, not only a part, but the whole, of their powers of supervision and control of public roads and bridges, and lodging such powers elsewhere, since the control of all general public highways is vested in the State absolutely without any constitutional limitation or restrictions. State *ex rel.* Luning v. Johnson, 71 Fla. 353, 72 South. Rep. 477."

Inasmuch as the Board of Bond Trustees of Putnam County was substituted by the legislative enactments, *supra,* for the Board of County Commissioners of Putnam County in regard to such matters, it follows that the law applicable to a board of county commissioners acting in such matters must be held to be applicable to the Board of Bond Trustees in Putnam County.

Section 4 of Article XVI of our Constitution provides: "Section 4. All county officers shall hold their respective offices, and keep their official books and records, at the county seats of their counties; and the clerk and sheriff shall either reside, or have a sworn deputy, within two miles of the county seat."

In Beville v. State, 61 Fla. 8, 55 Sou. 854, it was said: "A county seat or county town is a chief town of a county where the county buildings and courts are located and county business transacted." (Citing 11 Cyc. 366.)

In 7 R. C. L. 941, Sec. 17, it is said: "The board of county commissioners can only act as a body and when in legal session as such; but when so in session, unless the statute otherwise provides, the rule is that a majority may

act. Doubtless, however, matters of mere detail may be attended to by one or more of the commissioners outside of a meeting by previous authority of the board or such act may, in some cases, be ratified. The meetings of the board should be held in public and if the place of meeting of the board is designated by law, all meetings must be held at that place or the action of the board will be invalid and of no effect." See Harris v. State, 72 Miss 960, 18 Sou. 387, 33 L. R. A. 85 and note. See also McQuillan on Municipal Corporations, 2nd Ed., Vol. 2, Section 603.

The County of Putnam was created by Chapter 280, Acts of 1848. Section 5 of that Act provided: *"Be it further enacted,* That the Town of Pilatka shall be, and is hereby declared to be, the county site of said County of Putnam and that the Circuit Court of said county and the meetings of the county commissioners shall be held in the said town of Pilatka."

Section 11 of Chapter 9585, *supra,* provides: "Sec. 11. The books and records of the Trustees of Special Road and Bridge District Number Seven are hereby declared to be public records and shall be, at all reasonable times, open to the inspection of the public. That upon the request of the said Board of Bond Trustees the Board of County Commissioners shall provide an office in the Court House for the use of said Trustees."

We conclude that it is the spirit of our Constitution and statutes that the official meetings for the transaction of business by the boards of county commissioners and like boards in this State shall be publicly conducted at a known place in the county seat and that while the members of such boards may meet in other places for the purpose of investigating matters under consideration and for the purpose of discussing matters which may come before such boards for

disposition, when such boards assume to take official action involving public rights that action must be taken in the county seat and in a place open to the public.

It is contended that because no fraud is alleged in connection with the action of the majority of the board which held and participated in the meeting at which the authorizing resolutions were adopted, it is immaterial where such meeting may have been held. We cannot agree with this conclusion. To so hold would mean to put the burden on the taxpayers in all cases where such boards held their meetings away from the public and not in the county seat to allege and show fraud, or else submit to the public the business of the county being conducted in secret.

It is also contended that the emergency occasioned by the illness of the chairman of the board in the instant case made it necessary that the board meeting be held at his home, some five miles from the county site. The emergency appears to have existed only because the proposed fiscal agents insisted that the board take immediate action looking to the issuing of the refunding bonds and that unless action was taken then the refunding plan could not be carried through. If this contention is well founded, the time has passed when the refunding plan could be consummated. There should never be recognized a condition of emergency which precludes the opportunity of the taxpayer and public generally to be present when an administrative board is officially acting on a matter so important as the issuing or refunding of bonds by which all taxpayers are vitally affected.

We must hold that the showing made did not warrant the holding of the meeting involved at the place where it was held under the existing circumstances and that the action in that regard by a majority of the board of bond trustees was ineffective to accomplish the purpose designed.

It may be that it is not necessary to discuss other questions

presented. We will say, however, in connection with the second question, that the action of the Board of County Commissioners of Putnam County in passing resolutions purporting to authorize the refunding of the bonds involved was without force and effect because all the authority in this regard had been vested in the board of bond trustees. Therefore, the action of the board of county commissioners in joining in and becoming a party to the issuance of the refunding bonds was without force and effect. See the statutes above cited in this connection.

We do not mean to say that such action by the board of county commissioners would invalidate the bond issue. That action was simply surplusage which neither added to nor took from the validation of the purported issue.

This answers the third question also.

The fourth question is predicated on the provisions of Section 9 of Chapter 9583, Special Acts of 1923, the title of which was as follows:

"An Act Authorizing Putnam County, Florida, to issue Bonds for the Construction of a Bridge Across the St. Johns River at Palatka in Said County, Providing for the Electors, Who Are Freeholders, To Determine Whether Bonds Shall Be Issued for Such Purpose, Providing that Said Bridge Shall Be a Toll Bridge, and Prescribing How Tolls and Charges Shall Be Fixed and When Discontinued, and Otherwise Prescribing the Powers and Duties of the Board of County Commissioners of Said County, and of Bond Trustees in the Event Said County Is Created into a Special Road and Bridge District, and Providing for the Disposition of Bonds to the Account of the Present St. Johns River Bridge at Palatka, and for the Discontinuance and Disposition of Said Present Bridge and Granting Powers

148

of Eminent Domain in Said County in Connection with the Construction of Said New Bridge."

And Section 9, *supra,* provides: "Said board shall levy annually such special tax on the taxable property within said county as may be necessary to pay operative expenses, maintenance, necessary repairs on said bridge and approaches, and the interest on said bonds, and to provide a sinking fund therefor, making proper deductions for the net amount of tolls and charges collected. The special tax levied for interest and sinking fund shall be collected only in lawful money of the United States or in past due coupons on said bonds, and when collected shall be solely applied to the payment of the interest and to provide a sinking fund for the payment of said bonds. The sinking fund may be used at any time by a majority vote of all the members of said board in purchasing any of the outstanding bonds under this Act at a price to be approved by said board. All bonds redeemed shall be immediately cancelled."

The record shows that there is a large amount of money held in the sinking fund referred to in this section and that besides that amount of money there is in the fund 36 of the bonds proposed to be refunded of the par value of $1,000.00 each, which bonds have been purchased by the board of bond trustees under such statutory provision. Therefore, it follows that in law those bonds have been retired and are cancelled. They are no longer the outstanding obligation of the county.

It also appears that whatever money may be now in this sinking fund available for the retirement of bonds which are proposed to be refunded should be used for that purpose, thereby reducing the aggregate amount of refunding bonds to this extent.

The refunding bonds should refer to Chapters 9583 and

9585, Acts of 1923, Chapter 13333, Acts of 1927, Chapter 15772, Acts of 1931, which authorize the issue of the original and the refunding bonds.

Chapter 9583, Acts of 1923, under which the original bonds were issued provided for the use of bridge toll collections as the primary fund for paying the principal and interest of the bonds before an ad valorem tax levy is made for paying the bonds. Such provision is omitted from the refunding resolution and from the proposed refunding bonds and unless the omission is duly authorized, amended Section 6, Article IX of the Constitution may be violated.

The contract dated November 7, 1939, is challenged by the intervener taxpayer. Such contract is at least in-congruous in that it may be construed as attempting to delegate to fiscal agents of the board official duties and functions that the law contemplates shall be performed, in this case, by the "Board of Bond Trustees of Putnam County" in controlling the printing of the refunding bonds and in selecting or compensating attorneys to render legal service to the board in the process of issuing, validation and approval of refunding bonds. The same contract appoints fiscal agents for the board and the board engages to accept a bid for the refunding bonds from such fiscal agents of the board "when these bonds are offered for sale, in accordance with our (the agents) directions." The issuing authority should not be pre-bound to accept any bid in the event a better bid is offered when the bonds shall have been validated and are ready for delivery. Regardless of the amount of the compensation to be paid fiscal agents or the terms of proposed payment, the issuing authority should clearly reserve in its contract with such agency the right to fully exercise its official discretion and to freely perform its official duties in such matter.

The original bonds sought to be refunded are subject to call and the member of the "Board of Bond Trustees of Putnam County" who is a taxpayer intervener in this suit, contends that the commission contracted to be paid to the fiscal agents is excessive in view of the nature and extent of the services to be rendered. This allegation presents a question of fact.

Should new proceedings be instituted to refund the original bonds, such proceedings will be open to challenge on any grounds which may appear available.

It appears that there is time available between now and the first of July to consummate the authority for refunding the then outstanding bonds involved and it also appears that the bonds could not be refunded before July 1, 1940, because January 1 having passed, the bonds are not callable until July 1, 1940.

For the reasons stated, the decree is reversed and the cause remanded with directions that a decree be entered in favor of the respondents in the court below without prejudice to the relators proceeding to refund the original bonds in accordance with the provisions of law, should they deem it expedient to do so.

It is so ordered.

TERRELL, C. J., WHITFIELD, P. J., BROWN, CHAPMAN and THOMAS, J. J. concur.